507 So.2d 1377 (1987)
Omar BLANCO, Petitioner,
v.
Louie L. WAINWRIGHT, Etc., et al., Respondents.
Omar BLANCO, Appellant,
v.
STATE of Florida, Appellee.
Nos. 68,263, 68,839.
Supreme Court of Florida.
May 7, 1987.
Rehearing Denied July 10, 1987.
*1380 Larry Helm Spalding, Capital Collateral Representative and Mark E. Olive, Litigation Coordinator for Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Penny H. Brill and Carolyn V. McCann, Asst. Atty. Gen., West Palm Beach, for respondents/appellee.
SHAW, Justice.
The appellant/petitioner Omar Blanco is a Florida prisoner whose conviction for first-degree murder and sentence of death were affirmed by this Court in Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). A death warrant was signed and execution set for February 3, 1986. Blanco petitioned the trial court for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and this Court for a writ of habeas corpus. After granting a stay of execution and evidentiary hearings, the trial court denied all relief. We have jurisdiction, article V, sections 3(b)(1) and (9), Florida Constitution. We affirm the denial of rule 3.850 relief and deny the petition for writ of habeas corpus.

3.850 Relief
Appellant presented eleven claims to the trial court. We find that eight of these claims are procedurally barred because they either were or should have been presented on direct appeal: (1) did the trial court err in permitting appellant to call witnesses against the advice of defense counsel; (2) did the trial court conduct critical stages of the trial in the absence of appellant or an interpreter; (3) did the trial court err in questioning appellant concerning the presentation of his defense; (4) did the instructions to the jury unconstitutionally denigrate the jury's role in recommending life or death; (5) did the trial court improperly instruct the jury on the number of jurors required to return a life recommendation; (6) did the trial court improperly rely on the conviction for armed burglary as an aggravating factor; (7) did the trial court improperly rely on a previous conviction for armed robbery as an aggravating factor; and (8) did the prosecutor use inflammatory closing arguments. Herring v. State, 501 So.2d 1279 (Fla. 1986); Adams v. State, 484 So.2d 1216 (Fla.), cert. denied, ___ U.S. ___, 106 S.Ct. 1506, 89 L.Ed.2d 907 (1986); Smith v. State, 457 So.2d 1380 (Fla. 1984); Jones v. State, 446 So.2d 1059 (Fla. 1984); Demps v. State, 416 So.2d 808 (Fla. 1982). Only two of these procedurally barred claims merit any comment. Claim two was raised in part on direct appeal. Appellant now attempts to expand the claim by arguing that he did not receive a simultaneous translation of all proceedings and was not present at bench conferences held outside the hearing of the jury. Neither argument is cognizable on collateral review. Moreover, Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, ___ U.S. ___, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986), is directly on point. The public defender retained a personal translator for appellant and assigned a Cuban-born, Spanish-speaking attorney as assistant trial counsel. Both had served appellant in a previous trial for armed robbery and advised the court they had no difficulty communicating with him. The trial record contains a notation that the translator was seated next to the defendant throughout the trial. The record also shows that the trial judge required the translator and assistant counsel to demonstrate their proficiency in open court. The record also shows that at a noon recess, after the jury was excused, the trial judge conducted a short conference and noted that the translator had left with the jury, presumably with the permission of appellant and counsel. The trial judge later queried assistant counsel if he had advised appellant, in his native tongue, as to what had occurred and was assured that he had done so. We are satisfied, as in Suarez, that the court ensured that the *1381 appellant had the assistance of a competent translator at all times. On the question of appellant's presence at bench conference, the record shows that these conferences were held in appellant's presence. Nothing in the record supports the notion that appellant was not permitted to listen to these conferences, if either he or counsel so desired. On claim three, appellant attempts to revise claim one, which was presented and rejected on direct appeal, into a claim that the trial judge violated appellant's right against self-incrimination by questioning him on disagreements he had with defense counsel concerning the calling of witnesses. We rejected the core of this argument on direct appeal and see no impropriety in the judge directly addressing appellant concerning his desires on the conduct of the trial. The issue is not cognizable on collateral review.
Appellant presents four separate but overlapping arguments asserting that he received ineffective assistance of trial counsel. Appellant came to the United States from a Cuban prison during the 1980 boatlift from Mariel, Cuba. His brother, who was also in prison there, preceded him by several months. Both were detained at camps in the United States and released to the same sponsor in Dade County. The crimes here occurred, and were tried, in adjacent Broward County in 1982. Prior to the trial, defense counsel was concerned that the bad public reputation of Mariel refugees might prejudice the jury. Accordingly, the defense filed a motion for a change of venue but withheld moving it to hearing pending jury selection. On voir dire, without disclosing that appellant was a Mariel refugee from a Cuban prison, defense counsel questioned jurors closely and repeatedly on any prejudices they might have against Cuban emigrants in south Florida. The answers were satisfactory and each juror voiced impartiality. Appellant asserts, nevertheless, that counsel was ineffective for not dealing effectively with prejudice against Mariel refugees. In support, appellant produced the testimony of two Cuban emigre college professors who reviewed, at length, Cuban immigration to the United States and the negative public perception of Mariel refugees. The primary thrust of their testimony appears to have been that an overwhelming majority of the Mariel refugees were not criminal prisoners in Cuba and that the public perception of them as such was false. One professor opined that a Mariel refugee could not obtain a fair trial anywhere in the United States; the other professor concluded that a Mariel refugee could not receive a fair trial in south Florida. Neither was familiar with trial court procedures for ensuring that a defendant has an impartial jury or the actual measures taken in this case.
Claims of ineffective assistance of counsel are controlled by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A claimant who asserts ineffective assistance of counsel faces a heavy burden. First, he must identify the specific omission and show that counsel's performance falls outside the wide range of reasonable professional assistance. In evaluating this prong, courts are required to (a) make every effort to eliminate the distorting effects of hindsight by evaluating the performance from counsel's perspective at the time, and (b) indulge a strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment with the burden on claimant to show otherwise. Second, the claimant must show that the inadequate performance actually had an adverse effect so severe that there is a reasonable probability that the results of the proceedings would have been different but for the inadequate performance. Applying these precepts, appellant has not shown that counsel's performance in dealing with "Mariel prejudice" was inadequate or identified with any specificity exactly what trial counsel should have done differently. Our review of the trial record indicates that trial counsel questioned the jurors very effectively on any possible prejudices they might have had, and, at the same time, persuasively argued to the juror panels that such prejudices were inconsistent with their duties and oaths should they be selected *1382 for the jury. Even if the two experts correctly characterized the general state of public opinion, it does not follow that this jury, selected under the safeguards offered defendant, was anything other than impartial. We reject the bald assertion that Mariel refugees cannot receive a fair trial in the United States or south Florida.
Appellant also argues that trial counsel was ineffective for failure to investigate and present mitigating evidence. In support of this point, collateral counsel travelled to Cuba and obtained written testimonials from relatives and friends opining that appellant came from a good family, was of good character, was nonviolent, had a grandmother who suffered fits of mental derangement, and himself suffered as a child from such fits. Appellant also offered similar testimony from childhood friends of the family who themselves came to the United States during the Mariel boatlift and who stated they would have testified for appellant had they been asked. In addition, appellant also presented the testimony of his brother and a written testimonial from his sponsor, both of whom came to the United States during the Mariel boatlift, who claimed they were available and would have testified had they been called. None of these relatives or friends had any knowledge of the case but many professed that appellant was innocent. The trial record itself shows that trial counsel perceived a need to "humanize" appellant by presenting such evidence. To that end, the trial court directed that appellant be given an unlimited number of phone calls and that appellant and counsel both attempt to locate and persuade the brother and sponsor to testify at trial. The trial record shows that both counsel and appellant either talked with, or left messages for, the brother and sponsor over a period of days, but that neither responded or appeared to testify. The trial record contains approximately fifty pages of transcript on this subject but, despite a fourday continuance granted between the guilt and penalty phases, the efforts were unavailing and both counsel and appellant advised the court that they did not wish to call witnesses in mitigation. Under the circumstances as they existed at trial, we must determine whether counsel was ineffective for failing to further investigate and present mitigating evidence. We note first that the record shows that appellant himself did not know of the presence in New Jersey of the childhood friends. Consequently, counsel cannot be faulted for failing to discover their presence or for failing to contact them. Concerning the brother and sponsor, the record strongly suggests that neither the brother nor the sponsor wished to appear on behalf of appellant and, under those circumstances, counsel acted reasonably in not attempting to override appellant's express wishes that they not be subpoenaed.
The question remains whether trial counsel, under circumstances existing at the time of trial, was ineffective for failing to travel to Cuba on his own initiative to search for potential mitigating evidence. Appellant acknowledges that he did not make counsel aware of any potential character witnesses other than his brother and sponsor or urge that he seek mitigating evidence from Cuba. Nevertheless, he now urges that counsel had an independent duty to seek such evidence. We recognize that counsel has a degree of independent responsibility to act in the best interests of a client, but "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. The testimonials gathered by collateral counsel show that appellant went into the Cuban military around 1966 and experienced numerous disciplinary problems which resulted in his entering into forced service cutting sugar cane in lieu of military service or imprisonment. Thereafter, he was sentenced to two terms of six months and one year in prison for theft and to a term of eighteen years for black marketing. It was during this imprisonment that he was released through the Mariel boatlift. Thus, the testimonials contain substantial derogatory material and the positive material is largely based on distant contacts during appellant's *1383 childhood. Under these circumstances, and given appellant's disinterest, we are not persuaded that trial counsel acted unreasonably or ineffectively in not traveling to Cuba on his own initiative to investigate and present potential mitigating evidence as might be developed. We note, in this connection, that the evidence of appellant's Cuban background would necessarily bring out and emphasize appellant's background as a criminal prisoner who entered the United States through the 1980 Mariel boatlift. We agree with the trial judge that developing and presenting such evidence would have been directly contrary to trial counsel's adopted trial strategy of deemphasizing or avoiding the Mariel background. Given the mixed nature of the evidence subsequently developed, we are not persuaded that there is a reasonable probability that its absence made a difference in the ultimate outcome.
Appellant next argues that a conflict of interest developed between counsel and himself because of disagreements over whether to call certain witnesses and his own decision to testify and the subsequent disclosure of these disagreements to the trial judge by counsel. We do not agree that this constitutes a conflict of interest or that the disagreements adversely affected counsel's performance. It is not rare for counsel and defendant to disagree on strategy or tactics and, when they are unable to agree, we see no prejudice in seeking the advice or direction of the trial judge. Under these circumstances, counsel has no other viable choice. In this case, we held on direct appeal that the trial judge properly resolved the conflict in favor of appellant's choice. Appellant is simply taking an issue which has already been decided adversely to his position and attempting to relitigate it under the guise of ineffective assistance of counsel.
Finally, appellant argues that he was incompetent to stand trial and that counsel was ineffective for failing to raise the issue of incompetency. In support, appellant cites the report of an expert psychologist, prepared post-conviction, which opines that appellant suffers from organic brain damage and falls into the dull-normal range of intelligence. Appellant also cites evidence that, as a child, he suffered fits of mental derangement. Appellant also relies on the testimony of a former lawyer from Cuba that the Cuban legal system differs greatly from this country's system and that persons such as appellant might be rendered incompetent by cultural shock brought on by the differences in the two systems. The state responds that the expert psychologist also stated that the organic brain damage was not anything major and that appellant does not have a major psychological problem. Moreover, the state points out, appellant's childhood fits ceased when he was eight years old, that he had a normal and active life thereafter, and was in his thirties when the crimes and trial occurred. In addition, the record shows that trial counsel considered obtaining a psychiatric examination, but, with appellant's concurrence, decided not to do so because appellant gave every appearance of competency and a theory of incompetency would dilute appellant's strategy of denying guilt. There was no evidence calling into question appellant's competency to stand trial and mental condition is not necessarily an issue in every criminal proceeding. Bush v. Wainwright, Bush v. State, 505 So.2d 409 (Fla. 1987). As to the cultural shock of encountering this country's legal system, we agree with the trial judge that this testimony was of a general nature with limited, if any, relevance to the case at hand. The witness knew nothing of this case or appellant and based his specific testimony largely on his experience as a translator for four Latin-American defendants tried in Cincinnati, Ohio. We note also the trial judge's comment that appellant knew our system well enough to invoke his right to remain silent when arrested and that appellant was tried and convicted of armed robbery in a separate proceeding immediately prior to trial here. It appears that appellant was more experienced and better acquainted with trial procedures and his rights thereunder than the average defendant.

*1384 Writ of Habeas Corpus
Blanco's petition for writ of habeas corpus is almost entirely a repetition of the issues raised in the rule 3.850 proceeding. The gravamen of the petition, to use petitioner's phrase, is appellate counsel's failure to recognize egregious fundamental constitutional error appearing on the face of the trial record, to wit: ineffective assistance of trial counsel. Generally, ineffective assistance of trial counsel will not be cognizable on direct appeal when the issue has not been raised before the trial court. State v. Barber, 301 So.2d 7 (Fla. 1974). There are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue. Stewart v. State, 420 So.2d 862 (Fla. 1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed.2d 366 (1983); Foster v. State, 387 So.2d 344 (Fla. 1980). Petitioner asks that we expand this exception by holding, in effect, that not only may it be raised on direct appeal but that it must be raised on direct appeal, i.e., appellate counsel is ineffective for failing to do so. We decline to do so. A proper and more effective remedy is already available for ineffective assistance of trial counsel under rule 3.850. If the issue is raised on direct appeal, it will not be cognizable on collateral review. Appellate counsel cannot be faulted for preserving the more effective remedy and eschewing the less effective. By raising the issue in the petition for writ of habeas corpus, in addition to the rule 3.850 petition, collateral counsel has accomplished nothing except to unnecessarily burden this Court with redundant material. Our determination above on the rule 3.850 proceeding that trial counsel was effective negates any need to replough this ground once again.
Petitioner also urges that he is entitled to be repatriated to Cuba under the terms of an agreement between the United States and Cuba. Under petitioner's theory, this agreement is a treaty, which under the Supremacy Clause, article VI, United States Constitution, obligates Florida to return petitioner to Cuba in lieu of enforcing its criminal laws. The "treaty" petitioner relies on is actually a press communique from the United States Department of State announcing an agreement with Cuba for the repatriation of "Cuban nationals who came to the United States in 1980 via the port of Mariel, and who have been declared ineligible to enter the United States legally." The state points out that the United States government has not interceded on petitioner's behalf to enforce the supremacy clause and encloses a letter from the State Department which states that the agreement obligates Cuba to accept the Cuban nationals in question, but does not obligate the United States to return them. Petitioner's reliance on the press communique is misplaced; a press communique is not a treaty subject to approval by the United States Senate and does not implicate the supremacy clause.
In its answer brief to the issues raised on appeal of the denial of rule 3.850 relief, the state points out numerous instances of issues which are procedurally barred because they either were or should have been raised on direct appeal. In his reply brief, collateral counsel makes the representation to this Court that "[i]f direct appeal was the place to raise this, it is cognizable in the habeas petition." This is a totally incorrect statement of the law. As we have said many times, habeas corpus is not a vehicle for obtaining a second appeal of issues which were raised, or should have been raised, on direct appeal or which were waived at trial. Moreover, an allegation of ineffective counsel will not be permitted to serve as a means of circumventing the rule that habeas corpus proceedings do not provide a second or substitute appeal. Steinhorst v. Wainwright, 477 So.2d 537 (Fla. 1985); Harris v. Wainwright, 473 So.2d 1246 (Fla. 1985); McCrae v. Wainwright, 439 So.2d 868 (Fla. 1983).
We affirm the denial of post-conviction relief and deny the petition for writ of habeas corpus.
It is so ordered.
*1385 McDONALD, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.