706 So.2d 7 (1997)
Omar BLANCO, Appellant,
v.
STATE of Florida, Appellee.
No. 85118.
Supreme Court of Florida.
September 18, 1997.
Rehearing Denied February 25, 1998.
*8 Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for Appellant.
Robert A. Butterworth, Attorney General, and Sara D. Baggett, Assistant Attorney General, West Palm Beach, for Appellee.
SHAW, Justice.
We have on appeal the sentence of the trial court imposing the death penalty on Omar Blanco on resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The facts are set out fully in our opinion on direct appeal. See Blanco v. State, 452 So.2d 520 (Fla.1984). Omar Blanco broke into John Ryan's home at 11 p.m., January 14, 1982, struggled with Ryan, and shot him. As Ryan fell onto a bed, Blanco shot him six more times. Blanco was arrested a few minutes later and was identified at the scene by a neighbor. Blanco's wallet, driver's license, and keys were found at the scene. The next day, he was identified by Ryan's niece, Thalia, who had confronted him in her lighted bedroom for several minutes just before the shooting. (It was Thalia's bed that Ryan fell onto when he was first shot, and she was lying underneath him when he was shot six more times.)
Blanco was convicted of first-degree murder and armed burglary and presented no evidence in mitigation. The court, consistent with the jury's eight-to-four vote, sentenced him to death based on four aggravating circumstances[1] and no mitigating circumstances. After striking two aggravating circumstances,[2] this Court affirmed the conviction and sentence. We denied Blanco's petition for writ of habeas corpus and affirmed the denial of his rule 3.850 motion.[3]Blanco v. Wainwright, 507 So.2d 1377 (Fla.1987). A federal district court later vacated the death sentence due to ineffectiveness of penalty-phase counsel and remanded for a new penalty phase trial. Blanco v. Dugger, 691 F.Supp. 308 (S.D.Fla.1988).[4]
At resentencing, the State presented the testimony of the victim's niece (Thalia) and that of numerous officers and forensic experts. Blanco, on the other hand, presented the testimony of ten lay witnesses, the statements of his mother and father, and the testimony of two mental health experts. The jury recommended death by a ten-to-two vote and the trial court imposed the death sentence based on two aggravating circumstances,[5] one statutory mitigating circumstance,[6] *9 and eleven nonstatutory mitigating circumstances.[7] Blanco raises seven issues.[8]
Blanco claims that the court erred in refusing to hire the psychiatrist he selected. We disagree. Prior to retrial, defense counsel, Mr. Moldof, had difficulty selecting a Spanish-speaking psychiatrist and proposed that the court hire a Dr. Gonzales, with whom Moldof had made initial contact. The State balked at Gonzales's fee of $2,000 per day, and Moldof did not protest when the court questioned whether there were alternatives:
THE COURT: And you don't think there's anyone else out there?
MR. MOLDOF: Judge, I'm in a posture now where I'm taking any suggestions I can get, like I said.
When the court suggested that Moldof look for a different psychiatrist, Moldof agreed: "I'd be glad to." Moldof eventually contacted a Dr. Maulionwho had been suggested by the courtand discussed the case with him. The following exchange later took place:
THE COURT: Are you satisfied with him?
MR. MOLDOF: Yes, sir. He seems to be qualified. He is Spanish speaking. He seems to have all of the tools, at least, to be able to accomplish what we're seeking.
On the basis of this initial approval, the court hired Dr. Maulion to assist Blanco. One month later, after Maulion had begun working on the case, Moldof was more than pleased with him, commenting to the court: "I've seen his work[]. He seems to be more than acceptable. He is doing an excellent job." Dr. Maulion ultimately testified for the defense and it was not until months later, at the final sentencing hearing before the judge, that Moldof expressed any dissatisfaction. Moldof was particularly distressed because Maulion had been unable to identify Blanco in the courtroom from the witness stand:
[THE COURT:] Is there anything to discuss at this time prior to sentencing?
MR. MOLDOF: Your Honor, nothing other than I was looking through my sentencing memorandum we submitted to the Court and I could have sworn that in the sentencing memorandum I had placed the portion of the argument relating to the idea that in my view of the case one of theprobably one of the more important failings, if I look back and see things we did wrong, is when Dr. Maulion testified.
I felt like he was really not a forceful witness for the defense and, you know, we were here when he made the statement about not seeing Mr. Blanco in the courtroom. When I think the case over and over, I think that weighed heavily against us with the jury.
....
THE COURT: There were no complaints at all up to the testimony.
MR. MOLDOF: No question. And quite frankly, I guess one of theyou know, if that's my fault, then it's my fault. One of the problems is, you know, psychiatry is as much an art as a science to me.
We conclude that while Dr. Maulion may not have been Blanco's first choice in terms of the sequence in which he was selected, he nonetheless was Blanco's expert of choice in that he was approved by Moldof prior to appointment and was given high marks before testifying. The fact that Maulion's testimony did not live up to Blanco's expectations cannot in any way be categorized as a trial court error. See generally Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985) (pointing out that an indigent *10 defendant has no "constitutional right to choose a psychiatrist of his [or her] personal liking"). We note that in addition to appointing Dr. Maulion, the court appointed, at county expense, a psychologist, a neuropsychologist, a neurologist, and a sociologist to assist in Blanco's defense. We find no error.
During the course of his testimony, Dr. Maulion made the following statement:
[Blanco] was under extreme duress. It would have been extreme duress for a normal person to be in a situation in which you're in a way caught inside somebody else's house with a gun in your hand, and that somebody is trying to grab the gun from your hand. Which, of course, could turn into your death too. Because if that gun could have been pulled out of his hands, I'm not sure if the victim wouldn't have used it, okay.
That's a situation of extreme duress to any one of us. With someone with brain damage, that's catastrophic.
Based on this statement, Blanco now claims as his second point that the trial court erred in failing to give his requested instruction on the statutory mitigating circumstance of extreme duress.[9] This issue has already been decided adversely to Blanco.[10] We find no error.
In its current sentencing order, the court noted that the jury had previously recommended death by an eight-to-four vote. Blanco claims that this shows that the court improperly counted the prior recommendation as a factor when deciding the present sentence. We disagree. The plain language of the sentencing order shows that the court gave no weight to the prior recommendationthe court was merely reciting a factual history of the case. We find no error.
In its sentencing order, the court made the following finding concerning the mitigating circumstance of impoverished background:
This factor has been proven, however, all of Mr. Blanco's family come from the same background and there is no evidence that they followed a course of criminal conduct as Mr. Blanco did. This factor is therefore given little weight.
Blanco claims as his fourth point that the court erred in assigning little weight to this mitigating circumstance. We disagree.
The Court in Campbell v. State, 571 So.2d 415 (Fla.1990), established relevant standards of review for mitigating circumstances: 1) Whether a particular circumstance is truly mitigating in nature is a question of law and subject to de novo review by this Court;[11] 2) whether a mitigating circumstance has been established by the evidence in a given case is a question of fact and subject to the competent substantial evidence standard;[12] and finally, 3) the weight assigned to a mitigating circumstance is within the trial court's discretion and subject to the abuse of discretion standard.[13]
Applying this law to the present case, we find no error. First, the circumstance of impoverished childhood is mitigating in nature and qualifies for treatment as a *11 mitigating circumstance.[14] Second, competent substantial evidence supports the court's finding that this circumstance was established in this case.[15] And finally, the court did not abuse its discretion in assigning this circumstance little weight, for we cannot say that no reasonable person would give this circumstance slight weight in the calculus of this crime.[16]
Blanco next argues that Florida's capital felony sentencing statute is unconstitutional because every person who is convicted of first-degree felony murder automatically qualifies for the aggravating circumstance of commission during the course of an enumerated felony. We disagree. Eligibility for this aggravating circumstance is not automatic: The list of enumerated felonies in the provision defining felony murder[17] is larger than the list of enumerated felonies in the provision defining the aggravating circumstance of commission during the course of an enumerated felony.[18] A person can commit felony murder via trafficking, carjacking, aggravated stalking, or unlawful distribution, and yet be ineligible for this particular aggravating circumstance. This scheme thus narrows the class of death-eligible defendants. See Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). See generally White v. State, 403 So.2d 331 (Fla. 1981). We find no error.
We find the remainder of Blanco's claims to be without merit.[19] We conclude that the conviction for first-degree murder is adequately supported in the record and the sentence of death is proportionate. We affirm the death sentence.
It is so ordered.
OVERTON, GRIMES and HARDING, JJ., concur.
KOGAN, C.J., concurs in result only.
WELLS, J., concurs with an opinion in which GRIMES, J., concurs.
ANSTEAD, J., concurs specially with an opinion in which KOGAN, C.J., concurs.
WELLS, Justice, concurring.
I concur with the majority opinion and only write to address the issue raised by Justice Anstead in his special concurrence. That concurring opinion omits that Florida's death penalty statute was upheld against this challenge as to its validity under the United States Constitution in Bertolotti v. Dugger, 883 F.2d 1503 (11th Cir.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990), in which the court stated:
To the extent that Bertolotti challenges the use of felony murder as an aggravating circumstance, he attacks a decision firmly within the discretion of the Florida legislature. The Florida statute was adjudged constitutional in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)....
Bertolotti, 883 F.2d at 1528, n. 22 (citation omitted).
Clearly, no compelling reason has been advanced as to why this statute is now unconstitutional under the Florida Constitution. This Court has repeatedly upheld and applied it. Orme v. State, 677 So.2d 258 (Fla. 1996), cert. denied,___ U.S.___, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); Smith v. State, 641 So.2d 1319 (Fla.1994); Preston v. State, 607 So.2d 404 (Fla.1992), cert. denied, 507 U.S. 999, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993); Watts v. State, 593 So.2d 198 (Fla.), cert. denied, 505 U.S. 1210, 112 S.Ct. 3006, 120 L.Ed.2d 881 (1992); Diaz v. State, 513 So.2d 1045 (Fla.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1022 (1988); Way v. State, 496 So.2d 126 (Fla.1986); *12 Brown v. State, 473 So.2d 1260 (Fla.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985); Clark v. State, 443 So.2d 973 (Fla.1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984); Scott v. State, 411 So.2d 866 (Fla.1982); Menendez v. State, 419 So.2d 312 (Fla.1982); White v. State, 403 So.2d 331 (Fla.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). These citations are far from an exhaustive list of these cases.
In DuBoise v. State, 520 So.2d 260 (Fla. 1988), and in Jackson v. State, 575 So.2d 181 (Fla.1991), this Court did a thoughtful review of the application of this aggravator in conformity with Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), and Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). There is no sound reason to rebuke or revisit this application.
If the doctrine of stare decisis has any efficacy under our law, death penalty jurisprudence cries out for its application. Destabilizing the law in these cases has overwhelming consequences and clearly should not be done in respect to law which has been as fundamental as this and which has been previously given repeatedly thoughtful consideration by this Court.
GRIMES, J., concurs.
ANSTEAD, Justice, specially concurring.
While I recognize that the appellant's contention must fail in this case,[20] and that this Court has previously rejected the claim concerning the unconstitutional application of Florida's felony murder aggravator,[21] I write separately to express my disagreement with the reasoning of the majority opinion. This aggravator, as contained in section 921.141(5)(d), Florida Statutes (1995), may well be unconstitutional when applied to a defendant convicted of felony murder. When the same felony used to establish guilt of first-degree felony murder is again used as an aggravator to justify the imposition of the death penalty, Florida's felony murder aggravator may well fail to meet the U.S. Supreme Court's mandate that aggravating circumstances in a state's death penalty scheme must "genuinely narrow the class of persons eligible for the death penalty" and "reasonably justify the imposition of a more severe sentence compared to others found guilty of murder." Zant v. Stephens, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983).[22]
The concept of narrowing requires that once it has been established that a defendant is guilty of first-degree murder the sentencer may properly consider only additional factors, termed aggravators, that genuinely narrow the class of convicted murderers who may be eligible for the death penalty. For example, if a person is guilty of premeditated murder and is shown to have been guilty of additional aggravating misconduct, then he becomes part of a narrower, less numerous class of persons eligible for the death penalty. But a person convicted of felony murder who then has the same felony used against her as an aggravator does not become a member of a smaller group. Rather, the felony aggravator used there would make the entire larger group of felony murderers automatically eligible for the death penalty without proof of any additional aggravating misconduct. Hence, the felony aggravator serves no legitimate narrowing function in such a case.[23]
*13 In fact, when used to aggravate a felony murder, Florida's felony murder aggravator impermissibly favors, for sentencing purposes, a more culpable defendant convicted of intentional, premeditated murder over a defendant convicted of unpremeditated, felony murder. Hence, it provides for a "more severe sentence compared to others" on a patently irrational basis. There simply is no rational basis for treating a felony-murder offender more harshly than a premeditated killer.[24]
Under Florida's death penalty scheme, a convicted defendant cannot qualify for the death sentence unless one or more statutory aggravators are found to exist in addition to *14 the conviction for first-degree murder. See Elam v. State, 636 So.2d 1312 (Fla.1994). Hence, a defendant convicted of intentional premeditated murder will not be eligible for the death penalty unless some additional aggravating circumstance, in addition to the premeditated murder, is found to exist. On the other hand, a person found guilty of felony murder automatically becomes eligible for a death sentence. By reason of the felony murder aggravator, the underlying felony is used not only as a legal substitute for premeditation to support a first-degree murder conviction; but is also used as a statutory aggravator to immediately make the defendant eligible for the death sentence. In other words, Florida's felony murder aggravator permits a defendant convicted of felony murder to be sentenced to death by virtue of his conviction for felony murder alone.
Common sense alone tells us the scheme described above is patently inconsistent with the United States Supreme Court's strict requirements in Zant v. Stephens for a rational and narrowing scheme for selecting those who will be subject to the death penalty. Recently, the U.S. Supreme Court reiterated the requisite narrowing function that must be served by proper aggravating factors, explaining again that where a weighing state, like Florida, uses aggravating factors to determine who is eligible for the death penalty, "it cannot use factors which as a practical matter fail to guide the sentencer's discretion." Stringer v. Black, 503 U.S. 222, 235, 112 S.Ct. 1130, 1139, 117 L.Ed.2d 367 (1992). By making a defendant convicted of felony murder automatically eligible for the death penalty based upon the same felony that was used to establish the defendant's conviction for murder, this scheme simply does not narrow the class of convicted persons who become eligible for the death penalty. Rather, if anything, it clearly enlarges the eligible class in an irrational way.
The Tennessee Supreme Court in State v. Middlebrooks, 840 S.W.2d 317, 341-346 (Tenn.1992), struck the felony murder aggravator from the sentencing scheme in Tennessee, a weighing state just like Florida, and explained:
In Zant v. Stephens, the United States Supreme Court said that in order to comply with the Eighth Amendment, aggravating circumstances must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." It seems obvious that Tennessee's statute fails to narrow the class of persons eligible for the death penalty because:
Automatically instructing the sentencing body on the underlying felony in a felony-murder case does nothing to aid the jury in its task of distinguishing between first-degree homicides and defendants for the purpose of imposing the death penalty. Relevant distinctions dim, since all participants in a felony-murder, regardless of varying degrees of culpability, enter the sentencing stage with at least one aggravating factor against them.
....
A comparison of the sentencing treatments afforded first-degree murder defendants further highlights the impropriety of using the underlying felony to aggravate felony-murder. The felony murderer, in contrast to the premeditated murderer, enters the sentencing stage with one aggravating circumstance automatically charged against him. This disparity in sentencing treatment bears no relationship to legitimate distinguishing features upon which the death penalty might constitutionally rest.
840 S.W.2d at 342 (citations omitted) (quoting Engberg v. State, 686 P.2d 541, 560 (Wyo. 1984) (Rose, J., dissenting)). Other courts have come to the same conclusion. In prohibiting the application of a felony murder statutory aggravator, the North Carolina Supreme Court has declared:
A defendant convicted of a felony murder, nothing else appearing, will have one aggravating circumstance "pending" for no other reason than the nature of the conviction. On the other hand, a defendant convicted of a premeditated and deliberated killing, nothing else appearing, enters the *15 sentencing phase with no strikes against him. This is highly incongruous, particularly in light of the fact that the felony murder may have been unintentional, whereas, a premeditated murder is, by definition, intentional and preconceived.
State v. Cherry, 298 N.C. 86, 257 S.E.2d 551, 567 (1979). Similarly, the Wyoming Supreme Court echoed these holdings in a case where the same underlying felony was actually used to aggravate the defendant's crime in three different ways:
In this case, the enhancing effect of the underlying felony (robbery) provided two of the aggravating circumstances which led to Engberg's death sentence: (1) murder during commission of a felony, and (2) murder for pecuniary gain. As a result, the underlying robbery was used not once but three times to convict and then enhance the seriousness of Engberg's crime to a death sentence. All felony murders involving robbery, by definition, contain at least the two aggravating circumstances detailed above. This places the felony murder defendant in a worse position than the defendant convicted of premeditated murder, simply because his crime was committed in conjunction with another felony. This is an arbitrary and capricious classification, in violation of the Furman [v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)]/Gregg [v. State, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)] narrowing requirement.
Engberg v. Meyer, 820 P.2d 70, 89 (Wyo. 1991). Florida, too, has a separate pecuniary gain aggravator like the Wyoming statute. These cases from our sister courts demonstrate a potentially serious and unconstitutional flaw in the application of Florida's statutory death penalty scheme.
KOGAN, C.J., concurs.
NOTES
[1] The court found the following: 1) prior violent felony; 2) pecuniary gain and during the course of a burglary; 3) heinous, atrocious, or cruel (HAC); and 4) cold, calculated, and premeditated (CCP).
[2] We struck HAC and CCP.
[3] Fla. R.Crim. P. 3.850.
[4] The federal circuit court affirmed. Blanco v. Singletary, 943 F.2d 1477 (11th Cir.1991).
[5] The court found the following: 1) prior violent felony; and 2) pecuniary gain and commission during a burglary.
[6] The court found impaired capacity.
[7] The court found the following: 1) potential for rehabilitation; 2) fatherhood; 3) dull intelligence; 4) impoverished background; 5) organic brain damage; 6) unwavering declaration of innocence; 7) oppression in Cuba; 8) good character; 9) strong religious beliefs; 10) cooperation with police; and 11) loving family relationship.
[8] Blanco claims the court erred in the following matters: 1) refusing to allow defense counsel to retain the mental health expert of his choice; 2) refusing to instruct on the statutory mitigating circumstance of extreme duress; 3) giving undue weight to the jury's present and prior death recommendations; 4) underweighing the mitigating circumstance of impoverished background; 5) proportionality; 6) the felony murder aggravating circumstance is unconstitutional; 7) the death penalty is cruel and unusual.
[9] See § 921.141(6)(e), Fla. Stat. (1993) ("The defendant acted under extreme duress or under the substantial domination of another person.").
[10] See, e.g., Barwick v. State, 660 So.2d 685 (Fla. 1995) (holding that no instruction was required where defendant entered home to steal but "lost control" and stabbed victim when she resisted), cert. denied, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); Walls v. State, 641 So.2d 381 (Fla.1994) (holding that no instruction was required where defendant entered trailer to commit burglary but stabbed victim when he got loose from bindings and attacked defendant), cert. denied, 513 U.S. 1130, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995); Toole v. State, 479 So.2d 731, 734 (Fla.1985) ("[Duress] refers to external provocation such as imprisonment or the use of force or threats.").
[11] Campbell v. State, 571 So.2d 415, 419 n. 4 (Fla.1990).
[12] Id. at 419 n. 5.
[13] See generally Campbell 571 So.2d at 420. See also Johnson v. State, 660 So.2d 637, 647 (Fla. 1995), cert. denied, ___ U.S.___, 116 S.Ct. 1550, 134 L.Ed.2d 653 (1996); Windom v. State, 656 So.2d 432, 440 (Fla.), cert. denied,___ U.S.___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995); Ellis v. State, 622 So.2d 991, 1001 (Fla.1993). A trial court's end result in weighing aggravating and mitigating circumstances is subject to the competent substantial evidence standard. Campbell, 571 So.2d at 420.
[14] See Campbell, 571 So.2d at 419 n. 4.
[15] The record shows that Blanco grew up on a small farm in Cuba without plumbing or electricity, that he carried water from the local well daily, and that he worked in the fields at an early age.
[16] See Huff v. State, 569 So.2d 1247, 1249 (Fla. 1990) ("[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court.").
[17] See § 782.04, Fla. Stat. (1993).
[18] See § 921.141(5)(d), Fla. Stat. (1993).
[19] Issues 5 and 7 are without merit.
[20] This Court has previously found the evidence sufficient in this case to prove premeditated murder. See Blanco v. State, 452 So.2d 520 (Fla. 1984).
[21] See Clark v. State, 443 So.2d 973 (Fla.1983).
[22] The majority opinion fails to address this situation.
[23] In Jackson v. State, 648 So.2d 85 (Fla. 1994), we struck down the "cold, calculated, and premeditated" (CCP) jury instruction, which gave content to the underlying CCP aggravator, because the instruction essentially encompassed every premeditated murder. We explained:

Because the challenge to the CCP instruction has been properly preserved in this case and because Brown and its progeny can no longer serve as authority for summarily rejecting this claim, we must reconsider the constitutionality of the standard CCP instruction. As noted above, the jury in this case was instructed that it could consider, if established by the evidence, that "the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without a[ny] pretense of moral or legal justification." This standard instruction simply mirrors the words of the statute. Yet, this Court has found it necessary to explain that the CCP statutory aggravator applies to "murders more coldblooded, more ruthless, and more plotting than the ordinarily reprehensible crime of premeditated first-degree murder," Porter v. State, 564 So.2d 1060, 1064 (Fla.1990), cert. denied, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991), and where the killing involves "calm and cool reflection." Richardson v. State, 604 So.2d 1107, 1109 (Fla.1992). The Court has adopted the phrase "heightened premeditation" to distinguish this aggravating circumstance from the premeditation element of firstdegree murder. Id.; Rogers v. State, 511 So.2d 526, 533 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The Court has also explained that "calculation" constitutes a careful plan or a prearranged design. Rogers, 511 So.2d at 533. These explications by the Court make it clear that CCP encompasses something more than premeditated first-degree murder.
... The Supreme Court has found HAC-type instructions unconstitutionally vague because "[a] person of ordinary sensibility could fairly characterize almost every murder as `outrageously or wantonly vile, horrible and inhuman.' " Godfrey v. Georgia, 446 U.S. 420, 428-29, 100 S.Ct. 1759, 1764-65, 64 L.Ed.2d 398 (1980); see also Maynard, 486 U.S. [356] at 364, 108 S.Ct. [1853] at 1859 [100 L.Ed.2d 372 (1988)] ("an ordinary person could honestly believe that every unjustified, intentional taking of human life is `especially heinous'").
The premeditated component of Florida's standard CCP instruction poses the same problem. Where a defendant is convicted of premeditated first-degree murder, the jury has already been instructed that:
"Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.
Fla.Std.Jury Instr. (Crim.) 63. Without the benefit of an explanation that some "heightened" form of premeditation is required to find CCP, a jury may automatically characterize every premeditated murder as involving the CCP aggravator.
It would also be reasonable for the general public to consider premeditated first-degree murder as "cold-blooded murder." Without legal guidance that the coldness element is only present when the killing involves "calm and cool reflection," Richardson, or when the murder is "more cold-blooded, more ruthless, and more plotting than the ordinarily reprehensible crime of premeditated first-degree murder," Porter, the average juror may automatically characterize all premeditated murders as CCP.
Jackson, 648 So.2d at 88-89.
[24] Such a result is even more anomalous given that a person may be convicted as a principal to a felony murder even though it is established that the person did not actually participate in the killing of the victim, but only in the commission of a felony during which a killing occurred. Goodwin v. State, 405 So.2d 170, 172 (Fla. 1981) ("Appellant's presence during the actual killings is simply irrelevant for the purposes of this issue; the critical fact is his participation in the underlying felony."); Mills v. State, 407 So.2d 218, 221-22 (Fla. 3d DCA 1981) (fact that defendant was not present when coperpetrator killed victim did not absolve him of responsibility where evidence showed defendant aided and abetted in underlying felony). Consequently, the felony murder aggravator permits a defendant who consciously and intentionally killed to be treated more favorably than one who may not even have killed at all.

In Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the United States Supreme Court limited somewhat the consequences of the felony murder rule with respect to the penalty phase of a capital trial. In that case, the Court concluded that the Eighth Amendment does not permit the imposition of the death penalty on a defendant who aids and abets a felony in the course of which a murder is committed by others, but where the defendant does not himself kill, attempt to kill, or intend or contemplate that a killing take place or that lethal force be used. Subsequently, in Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Court held that a defendant's major participation in the underlying felony combined with his reckless indifference to human life is sufficient to meet the Enmund culpability requirement, even where the defendant is not the actual killer.