963 So.2d 173 (2007)
Omar BLANCO, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-1328.
Supreme Court of Florida.
April 12, 2007.
Rehearing Denied August 8, 2007.
*174 Ira W. Still, III, Coral Springs, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
Omar Blanco, a prisoner sentenced to death, appeals the summary denial of his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, *175 § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the denial of Blanco's motion.

I. FACTS AND PROCEDURAL HISTORY
On January 14, 1982, at about 11 p.m., Blanco entered the home of John Ryan. Ryan's niece, fourteen-year-old Thalia Vezos, was in bed reading when she saw Blanco standing in the hallway holding a gun and carrying a brown purse under his arm. Blanco entered her room, told Thalia to stay quiet, and then cut the telephone wires in her room. As Blanco left Thalia's room into the hallway, he immediately encountered John Ryan. A struggle ensued during which Blanco shot Ryan. Ryan fell on top of Thalia, who lay in her bed. Before fleeing, Blanco shot Ryan six more times.
Having seen the intruder for several minutes both in her room and in the adjacent hallway, Thalia provided police with a description of the assailant. A neighbor also informed police that he saw a man wearing a gray jogging suit leave the property. Shortly before midnight, an officer spotted Blanco riding a bicycle about one to one-and-a-half miles from the home. The officer determined that Blanco matched the description provided by Thalia and the neighbor. Blanco was taken to the Vezos home, where the neighbor identified Blanco "as having the same profile and jogging suit" as the person he saw. A brown men's purse containing Blanco's ID papers and Thalia's watch was found near Thalia's bedroom. The following morning Thalia identified Blanco in a lineup.
Blanco was tried and convicted of armed burglary and sentenced to death for the murder of John Ryan. On direct appeal, we affirmed the convictions and sentences. Blanco v. State, 452 So.2d 520 (Fla.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985).[1] We also affirmed Blanco's subsequent appeal from denial of his first motion for postconviction relief, and denied his petition for writ of habeas corpus. Blanco v. Wainwright, 507 So.2d 1377 (Fla.1987).[2] A federal court later vacated *176 the death sentence based on ineffective assistance of penalty-phase counsel. Blanco v. Dugger, 691 F.Supp. 308 (S.D.Fla.1988), aff'd sub nom. Blanco v. Singletary, 943 F.2d 1477 (11th Cir.1991).[3] During the pendency of the resentencing proceedings, Blanco filed his third motion for postconviction relief, alleging newly discovered evidence.[4] After holding an evidentiary hearing, the trial court denied relief, and we affirmed. Blanco v. State, 702 So.2d 1250 (Fla.1997).[5]
After a second penalty phase, the jury recommended death by a ten-to-two vote, and the trial court sentenced Blanco to death, based on two aggravating circumstances: prior violent felony and pecuniary gain and commission during a burglary. Blanco v. State, 706 So.2d 7, 8 & n. 5 (Fla.1997), cert. denied, 525 U.S. 837, 119 S.Ct. 96, 142 L.Ed.2d 76 (1998). We affirmed. Id. at 8.[6]
Following his resentencing, Blanco filed a rule 3.850 motion for postconviction relief in which he raised twenty-two claims. After a Huff hearing,[7] the trial court summarily denied each claim.

II. ANALYSIS
On appeal, Blanco raises the following issues, which we address in turn: that the trial court erred (A) in denying his motion to require law enforcement officers to run a latent fingerprint through the Automated Fingerprint Identification System (AFIS); (B) in failing to hold an evidentiary hearing regarding allegedly tainted evidence; and (C) in summarily denying most of his claims both individually and cumulatively.

A. THE AFIS SEARCH
During the postconviction proceedings after resentencing, Blanco filed a motion to *177 require state officials to run through a national database of fingerprints the latent fingerprint found on Thalia Vezos's bedroom door at the time of the murder. He alleged that the print belonged to the "real" killer. After a hearing, the circuit court denied the motion. Blanco argues that (1) the trial court erred in denying his motion to require that an unidentified latent fingerprint found at the crime scene in 1982 be run through AFIS for identification; (2) that possible leads resulting from using AFIS would constitute newly discovered evidence; and (3) that the State's failure to run the print through AFIS at this time violated Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). As we explain, we reject each of these contentions.
A trial court's ruling denying postconviction discovery is subject to review for abuse of discretion. State v. Lewis, 656 So.2d 1248, 1250 (Fla.1994) (holding that the court has inherent authority, upon good cause shown, to permit limited discovery on postconviction claims into relevant and material matters and that denial of such a motion is subject to abuse of discretion review). The trial court did not abuse its discretion here. During the 1982 guilt phase, an expert testified that a latent fingerprint found on the door of Thalia Vezos's room remained unidentified. He estimated that the print could have been left at least ten days before the murder. No fingerprint evidence was admitted against Blanco, and Thalia testified that the killer wore socks over his hands. Further, at trial Thalia identified Blanco, and another eyewitness identified him as matching the form he saw leaving the home shortly after the murder. Blanco's wallet and identification papers were found at the murder scene, and Blanco, who does not live in the area of the victim's home, was arrested shortly after the murder within one-and-a-half miles of the home. Finally, at the hearing on the motion, Blanco admitted that his expert had determined that the latent print also did not match Enrique Gonzalez, a defense witness at trial whom Blanco has long contended is the "real" murderer. In addition, in his brief, Blanco admits that his expert also determined that the latent print did not match the fingerprints of anyone he believed to be a suspect. Accordingly, Blanco has not shown that his request would result in relevant or material evidence.
The remaining claims regarding this issue are not preserved. At the hearing on the AFIS motion, Blanco expressly disavowed that he was arguing newly discovered evidence, and he did not allege Brady or Giglio violations either. Accordingly, these claims are waived and we do not address them.

B. THE EVIDENCE BOX
At trial in 1982, the evidence showed that the killer wore socks on his hands and dropped them on the floor. During postconviction proceedings, Blanco filed a motion to compel production of the socks, which he alleged were missing from the evidence box. He further claimed that because the items in the box were not separately packaged, the socks were probably tainted and DNA testing was likely impossible. The circuit court held a hearing, at which the court's chief evidence clerk testified that the socks were in the box and were separately packaged. He suggested that defense counsel may have been confused by the difference between the number assigned the evidence at trial and the new number assigned at resentencing. With the socks thus produced, the circuit court granted the defense's motion to compel.
*178 On appeal, Blanco argues (1) that the trial court erred by not holding an evidentiary hearing on his claim that all of the evidence in the box was tainted; and (2) that the socks were not in the box when defense counsel originally examined it and that the socks probably could not be DNA tested.
Blanco's first argument is not preserved for review. On appeal, Blanco contends that the bloody clothes of the victim were commingled with Blanco's clothes. At the hearing on Blanco's motion to compel, however, defense counsel did not argue due process was violated because the evidence in the box was contaminated. Nor did he present evidence or ask for a ruling on the issue.
Regarding the second claim, the record shows that the clerk determined that the socks were in the box and defense counsel agreed that the socks produced were the requested evidence. Further, at the hearing, defense counsel requested, and was granted permission, to review the feasibility of DNA testing. The record contains no evidence that Blanco took any further action.
On appeal, Blanco also contends that the socks cannot now be tested for gunshot residue. This claim was never presented to the circuit court and is not preserved for review. Accordingly, as to all of these claims, Blanco has failed to demonstrate trial court error.

C. SUMMARY DENIAL OF BLANCO'S TWENTY-TWO CLAIMS
In his fourth motion for postconviction relief, Blanco raised twenty-two claims. After a Huff hearing, the trial court summarily denied all of them. Blanco appeals as to each claim and also argues that the trial court erred in failing to consider their cumulative impact.
A defendant is entitled to an evidentiary hearing on postconviction claims unless the motion and record conclusively show that the defendant is entitled to no relief. See Gaskin v. State, 737 So.2d 509, 516 (Fla.1999). A defendant is entitled to no relief when his postconviction motion claims are legally insufficient, procedurally barred, or otherwise meritless. Hodges v. State, 885 So.2d 338, 355 (Fla.2004). Based on this standard, we deny all of Blanco's claims, as we explain below.

Procedurally Barred Claims
Claims that could have been raised in prior proceedings are procedurally barred. See Muhammad v. State, 603 So.2d 488, 489 (Fla.1992) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Because this is Blanco's fourth postconviction motion  although his first after resentencing  we reject the following claims as procedurally barred: that lingering questions about the crime scene investigation require an evidentiary hearing to reach a final resolution; that the State unlawfully procured the absence of Enrique Gonzalez and Fidel Romero, whom Blanco claims are the actual murderers; that the trial court prevented Blanco from testifying during the second penalty phase; that Blanco was prejudiced by his absence from the courtroom during certain portions of the guilt phase; that the State used false or misleading evidence during the guilt phase; all guilt phase ineffective assistance of counsel claims; issues concerning gunshot residue testing, which were previously raised at trial; a challenge to the reliability of eyewitness testimony during the guilt phase of the trial; and claims that *179 Florida's death penalty and sentencing laws are unconstitutional.

Meritless Claims
We find that the remainder of Blanco's claims are meritless. First, we reject Blanco's claim that counsel told him he was not permitted to testify on his own behalf during the second penalty phase. Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). According to Strickland, to prevail on an ineffective assistance of counsel claim, the defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defendant to such a degree as to undermine confidence in the outcome. Id. The record makes clear that counsel made Blanco aware, in open court, of his right to testify. Blanco's claim therefore fails the first prong of the Strickland test.
We reject Blanco's claim that penalty phase counsel failed to adequately investigate psychological and psychiatric mitigation evidence. The record clearly demonstrates that two mental health experts presented testimony on Blanco's behalf during the second penalty phase. We also reject Blanco's claim that counsel was ineffective for failing to present certain statutory and nonstatutory mitigators during the second penalty phase. The record reflects that the mitigators Blanco argues should have been presented at his penalty phase are inconsistent with his theory of the case: that he is innocent of Mr. Ryan's murder. We therefore find that counsel's performance was not deficient. Blanco also argues that his second penalty phase counsel was ineffective for failing to inform him of a plea deal the State offered, and that upon Blanco's rejection of the deal the State acted vindictively in seeking the death penalty. These claims are meritless because the record clearly indicates the State never offered Blanco any plea deal.
Blanco's claims that the trial court erred in failing to develop a record from which it could conduct a proportionality review and that, in affirming his conviction, this Court failed to include an indepth study of its proportionality review, are also meritless. Proportionality is inherently reviewed on direct appeal, regardless of whether such review is mentioned in this Court's published opinions. Patton v. State, 878 So.2d 368, 380 (Fla. 2004). We conducted a proportionality review of Blanco's case in Blanco v. State, 706 So.2d 7 (Fla.1997). We find no deficiency in the record that would have precluded an effective review at that time.
Blanco also argues that since the time of his trial DNA testing technology has undergone considerable development, but fails to claim what evidence should be submitted for further testing. To the extent that Blanco appears to present a newly discovered evidence claim, such claims are governed by Jones v. State, 709 So.2d 512, 521 (Fla.1998). According to Jones, in order to obtain relief on a claim of newly discovered evidence, a defendant must establish that (1) the evidence was not known at the time of trial and could not have been discovered through the use of due diligence, and (2) the newly discovered evidence is of such a nature that it would probably produce an acquittal on retrial. Blanco's claim fails the second prong of the Jones test because he fails to demonstrate how improved DNA testing procedures would probably lead to an acquittal on retrial. This claim is therefore legally insufficient and meritless. Id. We also reject Blanco's claim that the trial court failed to cite the record in addressing each of his claims. The trial court addressed each claim in its order by *180 directly citing the record or by adopting portions of the State's response. We find no error.
Because we affirm the trial court's denial of Blanco's twenty-two individual claims, his claim based on the cumulative effect of these errors must also fail. A claim of cumulative error is without merit where each of the underlying claims is without merit. Wright v. State, 857 So.2d 861, 871 (Fla.2003).
For the foregoing reasons we affirm the trial court's summary denial of Blanco's postconviction motion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Blanco raised nine issues on appeal: the trial court erred (1) in denying the motion to suppress evidence, (2) in denying admission of evidence of a prior armed robbery committed in the neighborhood, (3) in announcing its ruling on a previously argued motion in Blanco's absence, (4) in allowing Blanco to call witnesses against defense counsel's advice, (5) in denying Blanco's motion to suppress witness identification testimony, (6) in allowing the State to impeach Blanco with statements that had been suppressed under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), (7) in instructing the jury on burglary, (8) in sentencing Blanco separately for burglary where the first-degree murder conviction was based on felony murder, and (9) in imposing the death penalty.
[2] This Court found the following claims were procedurally barred: the trial court erred (1) in permitting appellant to call witnesses against the advice of defense counsel, (2) by conducting critical stages of the trial in the absence of Blanco or an interpreter, (3) in questioning Blanco concerning the presentation of his defense, (4) by improperly instructing the jury on the number of jurors required to return a life recommendation, (5) by improperly relying on the armed burglary conviction as an aggravating factor, and (6) by improperly relying on a prior armed robbery conviction as an aggravating factor; (7) the jury instructions unconstitutionally denigrated the jury's role in recommending life or death; and (8) the prosecutor used inflammatory closing arguments. Blanco, 507 So.2d at 1380. The court also affirmed denial of relief on the following claims: that trial counsel was ineffective for (1) failing in voir dire to effectively deal with prejudice against Mariel refugees and (2) failing to investigate and present mitigating evidence, including failing to go to Cuba for evidence; (3) that a conflict of interest existed between him and defense counsel over presentation of witnesses; and (4) that he was incompetent to stand trial and counsel was ineffective for failing to raise this issue. Id. at 1381-83.

In his habeas petition, Blanco alleged most of the claims raised in the postconviction proceeding, claiming that appellate counsel failed to recognize fundamental error in trial counsel's ineffectiveness. Blanco, 507 So.2d at 1384. We rejected this argument because rule 3.850 provides the proper remedy for such claims. We also rejected Blanco's claim of entitlement to repatriation to Cuba.
[3] In the federal habeas proceedings, Blanco raised both guilt phase and penalty phase issues. The court, however, remanded for a new sentencing phase based only on trial court interference in the penalty phase and ineffective assistance of counsel in allowing trial court interference and failing to investigate and present mitigation.
[4] In 1989, Blanco filed his second postconviction motion during the federal habeas proceedings, but it was dismissed as moot when the federal court ordered resentencing.
[5] Blanco alleged newly discovered evidence based on the theory that Enrique Gonzales was the real killer. Two witnesses testified they saw Gonzales in a bloody shirt the night of the murder. Blanco also introduced letters of Julio Guerra and "Mamita" that Gonzales confessed to the crime in prison. On appeal, we denied Blanco's claim that this evidence entitled Blanco to a new trial and that the trial court erred in denying Blanco's motion for disqualification. Blanco, 702 So.2d at 1251-52 & n. 4.
[6] On appeal, Blanco raised seven issues: the trial court erred in (1) refusing him the mental health expert of his choice, (2) refusing to instruct on the statutory mitigator of extreme duress, (3) improperly giving weight to the previous jury's death recommendation; (4) giving insufficient weight to the mitigating circumstance of impoverished background; (5) that the death sentence lacked proportionality; (6) that the murder in the course of a felony aggravator is unconstitutional; and (7) that the death penalty constitutes cruel and unusual punishment. Blanco, 706 So.2d at 9 & n. 8.
[7] Huff v. State, 622 So.2d 982, 983 (Fla.1993) (requiring a hearing upon the filing of a postconviction motion and answer to determine whether an evidentiary hearing is needed and to hear argument on legal issues).