677 So.2d 258 (1996)
Roderick Michael ORME, Appellant,
v.
STATE of Florida, Appellee.
No. 81645.
Supreme Court of Florida.
May 2, 1996.
Rehearing Denied July 23, 1996.
*259 Nancy A. Daniels, Public Defender and David A. Davis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Barbara J. Yates, Assistant Attorney General, Tallahassee, for Appellee.
*260 PER CURIAM.
We have on appeal the conviction and judgment of the trial court imposing a death sentence upon Roderick Michael Orme. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Roderick Michael Orme had an extensive history of substance abuse for which he previously had sought treatment at a recovery center in Panama City. On the morning of March 4, 1992, Orme suddenly appeared at the center again, despite a lapse of about a year since his prior treatment. He was disoriented and unable to respond to questions, but he did manage to write a message. It was "LEE'S MOT RM15."
While a breathalyzer returned negative results, Orme's blood tested positive for cocaine and he was showing signs of acute cocaine withdrawal. He was cold, his face was flushed, and he was exhibiting symptoms like delirium tremens. An attending physician placed Orme in intensive care for thirty hours. Illegal barbiturates were found in Orme's possession.
Lee's Motel was located only a few blocks from the recovery center. Someone at the center telephoned the motel and said that a man who sounded hysterical had said to check room 15. The owner did so and found the body of a woman who had been badly beaten.
Semen was found in the victim's orifices, but DNA testing could not identify a DNA match. One sample taken from the victim's panties, however, held material that matched the pattern of Orme's DNA. Orme's underpants also had a mixed blood stain matching both Orme and the victim's genotype. Orme's fingerprints were found in the motel room, and his checkbook and identification card were found in the victim's car, which was parked outside.
The cause of death was strangulation. There were extensive bruising and hemorrhaging on the face, skull, chest, arms, left leg, and abdomen, indicating a severe beating. The abdominal hemorrhaging extended completely through the body to the back and involved the right kidney. Jewelry the victim always wore was missing and was never found. Police later identified the body as that of Lisa Redd, a nurse.
Orme acknowledged that he had summoned Redd to his motel room the day she was killed because he was having a "bad high" after freebasing cocaine. Orme and Redd had known each other for some time, and Orme called her because she was a nurse.
On March 4, 1992, Orme told police he had last seen Redd twenty minutes after she arrived at his motel. Orme said she had knocked a crack pipe from his hands, apparently resulting in the loss of his drugs. He left to go partying soon thereafter. In this statement, he also said that this was the first time he had abused cocaine since 1990 and that he did not remember being at the addiction recovery center.
The following day Orme gave a lengthier statement to police. In this one, he said that Redd had arrived at his motel room between 9 and 10 p.m. She slapped his crack pipe out of his hands and swept several pieces of crack into the toilet. Orme said he then took the victim's purse, which contained her car keys, and drove away in her car. Orme said he left and returned several times and that it was still dark when he realized something was wrong with Redd. The last time he returned, however, he could not enter because he had left the motel key inside the room.
Orme was arrested on March 6, 1992, after his release from the hospital. On March 26, 1992, he was charged by indictment with premeditated or felony murder, robbery, and sexual battery.
At trial, Orme testified that Redd had arrived at his motel room at 7, 8, or possibly 8:30 p.m. He again said he returned to the motel room at some point. At this time he realized Redd's body was cold and that something was wrong. But he said the next thing he remembered was being in the hospital.
Robert Pegg, a cab driver, testified at trial that he had picked up Orme at Lee's Motel around 8 p.m.
A man who lived across from the motel, Joseph Lee, also testified. He said that he *261 generally kept track of what was happening at the motel and had first noticed the victim's automobile there around 9:30 or 10 p.m. Lee said he saw Orme leave and return several times. Before going to bed around 2 a.m., Lee said he saw Orme leave in the victim's car once more.
Another witness, Ann Thicklin, saw someone slowly drive the victim's car into Lee's Motel around 6:15 a.m.
The jury convicted Orme on all counts and recommended death on a vote of seven to five. The defense waived the mitigator of no prior criminal history and asked for the jury to be instructed on the age mitigator, the two statutory mental mitigators (substantial impairment and extreme emotional disturbance), and the catch-all mitigator. The state asked for three instructions: murder committed in the course of a sexual battery; heinous, atrocious, or cruel; and pecuniary gain.
Shortly before sentencing, the defense asked the court to consider the "no significant prior criminal history" factor based on the presentence investigation ("PSI") and penalty-phase testimony. The defense stated that it had waived the factor to prevent the State from introducing a rebuttal witness about an alleged prior sexual assault committed by Orme.
The trial court stated that it had considered this motion. Shortly thereafter the judge sentenced Orme to death, finding all three aggravators argued by the State. In mitigation, the trial court found both statutory mental mitigators and gave them "some weight," but concluded they did not outweigh the case for aggravation. The Court rejected the other factors argued by Orme: his age (30), his love for his family, an unstable childhood, potential for rehabilitation, and good conduct while awaiting trial.
In this appeal, Orme raises a number of issues challenging his conviction and sentence. First, Orme argues that the trial court should have directed a judgment of acquittal on grounds the case against him was circumstantial and the State had failed to disprove all reasonable hypotheses of innocence. See Davis v. State, 90 So.2d 629, 631 (Fla.1956). As his hypothesis, Orme contends that during his absence from the motel room an unknown assailant entered and killed Redd, with Orme discovering the body later in the morning. This hypothesis, he says, is entirely consistent with the direct evidence presented at trial, thus requiring a directed verdict under Davis.
In Davis, we made the following observations:
Direct evidence is that to which the witness testifies of his own knowledge as to the facts at issue. Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer that the ultimate facts in dispute existed or did not exist. The conclusion as to the ultimate facts must be one which in the common experiences of men may reasonably be made on the basis of the known facts and circumstances.
Id. at 631. Proof based entirely on circumstantial evidence can be sufficient to sustain a conviction in Florida provided the other conditions established by the Davis line of cases are satisfied.[1]Id. Thus, our analysis of this case must begin by determining the threshold question of whether the case against Orme was wholly circumstantial.
The direct evidence presented by the State placed Orme at the scene of the crime around the time of Redd's death. This was established both by eyewitness testimony and Orme's own statement to police. His *262 statement further acknowledged both a dispute between Redd and himself over his use of cocaine, and his theft of her purse and automobile. The DNA and blood-stain evidence taken from Orme and Redd's clothing obviously suggested that Orme had engaged in sexual relations with the victim. Likewise, the medical examination of the victim clearly showed she had been sexually assaulted around the time of death. Nevertheless, semen taken from the victim could not be matched to Orme; and at trial Orme argued that the DNA and blood-stain evidence could be explained by the fact he had engaged in sexual relations with Redd a week or two earlier.
Evidence such as this cannot be deemed entirely circumstantial. Nevertheless, we will assume arguendo that it was and proceed to the next question in a Davis analysis: whether a reasonable hypothesis of innocence existed that the State's case failed to disprove. We have described the standard for weighing this question in the following terms:
A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt....
... [The court's] view of the evidence must be taken in the light most favorable to the state. The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
State v. Law, 559 So.2d 187, 188-89 (Fla. 1989) (citations omitted) (quoting State v. Allen, 335 So.2d 823, 826 (Fla.1976)). In sum, the sole function of the trial court on motion for directed verdict in a circumstantial-evidence case is to determine whether there is prima facie inconsistency between (a) the evidence, viewed in the light most favorable to the State and (b) the defense theory or theories. If there is such inconsistency, then the question is for the finder of fact to resolve. The trial court's finding in this regard will be reversed on appeal only where unsupported by competent substantial evidence.
Orme's theory explaining the DNA and blood-stain evidence obviously is a strained reading of the evidence. He suggests that he was not the attacker even though he acknowledged he was present at the scene at the times in question and had argued with and robbed the victim. We note that Orme's account was the sole factual source for the defense's theory, and his credibility clearly had been called into question by inconsistencies in his stories to the officials. Moreover, nothing anywhere in the record suggests that another person was present in the motel room. Based on this record, the State's theory of the evidence is the most plausible: that Orme was the one who had attacked and killed Redd. Put another way, competent substantial evidence supports the conclusion that the State had presented adequate evidence refuting Orme's theory, creating inconsistency between the State and defense theories. Accordingly, we may not reverse the trial court's determination in this regard.
As his second issue, Orme contends that his statements to officers should have been suppressed on grounds he was too intoxicated with drugs to knowingly and voluntarily waive his right to silence. While we acknowledge there is conflicting evidence in the record on this point, we nevertheless are limited in this appeal by the applicable standard of review. Our duty on appeal is to review the record in the light most favorable to the prevailing theory and to sustain that theory if it is supported by competent substantial evidence. Johnson v. State, 660 So.2d 637, 641 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1550, 134 L.Ed.2d 653 (1996). Here, friends and family members supported the defense's theory that Orme was severely intoxicated at the times in question. However, the officers who actually took Orme's statements testified that he was coherent and responsive. Moreover, the *263 statements were taped, and the trial court after reviewing these tapes concluded that the evidence supported the state's theory. Because there is competent substantial evidence supporting this conclusion, we may not reverse it on appeal. Id.
Third, Orme argues that death is not a proportionate penalty in this case because his will was overborne by drug abuse, and because any fight between the victim and him was a "lover's quarrel." As to his drug abuse, the evidence again is conflicting. Orme paints a portrait of himself as a person rendered conscienceless by drugs. But the State submitted competent substantial evidence that, despite his addiction, Orme was able to hold down a job and hide his drug abuse from his family. On the night of the murder he was able to drive a car without incident and talked in a normal manner with persons he encountered. Moreover, we decline to find that the instant homicide was a lover's quarrel. The argument supporting such a claim is simply too tenuous, resting primarily on a relationship with the victim that had ended. There is no evidence the murder was sparked by an emotional reaction to this breakup. Rather, competent substantial evidence shows this killing to be a strangulation murder designed to further both a sexual assault and a robbery, not a "lover's quarrel." Upon consideration of all of the circumstances of this case, we find death to be a proportionate and permissible sentence.
As his fourth point, Orme contends that his mental state at the time of the murder was such that he could not form a "design" to inflict a high degree of suffering on the victim. Thus, argues Orme, the trial court erred in instructing the jury regarding, and in later finding, the aggravating factor of heinous, atrocious, or cruel. Our case law establishes, however, that strangulation creates a prima facie case for this aggravating factor; and the defendant's mental state then figures into the equation solely as a mitigating factor that may or may not outweigh the total case for aggravation. Michael v. State, 437 So.2d 138, 142 (Fla.1983), cert. denied, 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984).
Orme cites to cases such as Mann v. State, 420 So.2d 578 (Fla.1982), and Porter v. State, 564 So.2d 1060 (Fla.1990), cert. denied, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991), in support of his argument, but we find them unpersuasive. Mann, 420 So.2d at 581, clearly upheld the heinous, atrocious, or cruel aggravator but then faulted the trial court for failing to issue a clear ruling as to the nature of the mitigating evidence to be weighed in counterbalance. Porter, 564 So.2d at 1063, moreover, involved a gunshot slaying that factually could not qualify as heinous, atrocious, or cruela conclusion simply inapplicable in the context of a strangulation murder. We find no error.
As his fifth argument, Orme alleges error in the trial court's failure to weigh in mitigation the fact that he had no significant prior criminal history. Because Orme expressly waived that factor for strategic reasons,[2] we find no error.
Sixth, Orme contends the trial court erred in declining to give a special instruction that acts perpetrated on the victim after her death are not relevant to the aggravator of heinous, atrocious, or cruel. Even assuming arguendo that such an instruction is ever necessary, we find that the facts of the present case simply did not support giving such an instruction. The medical examiner testified that all of the injuries sustained by the victim were inflicted before death. Because this testimony competently and substantially supports the trial court's decision not to give the requested instruction, we may not reverse.
As his seventh point, Orme argues that the instruction on heinous, atrocious, or cruel violated the dictates of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Because Orme himself requested this instruction, he may not now complain that it was given. The issue is procedurally barred.
*264 Eighth, Orme alleges that he was incapable of forming the specific intent necessary for first-degree murder and that this fact somehow bars his death sentence under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We find this argument meritless. Enmund is inapplicable because that opinion only addresses the question of coperpetrators who did not actually kill a victim. Moreover, competent substantial evidence supports the State's theory that specific intent existed here; and, in any event, the felonies committed by Orme in conjunction with the murder were sufficient to justify his sentence under the felony murder rule.
For the foregoing reasons, the judgment and sentence are affirmed.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] We stated these conditions in the following terms:

When the State relies upon purely circumstantial evidence to convict an accused, we have always required that such evidence must not only be consistent with the defendant's guilt but it must also be inconsistent with any reasonable hypothesis of innocence. Head v. State, Fla.1952, 62 So.2d 41; Mayo v. State, Fla.1954, 71 So.2d 899.
Evidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, ... is not sufficient to sustain conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict.
Davis v. State, 90 So.2d 629, 631-32 (Fla.1956).
[2] Specifically, Orme waived the factor to foreclose the State from introducing evidence he previously had sexually assaulted another woman.