906 So.2d 1231 (2005)
STATE of Florida, Appellant,
v.
Bruce LING, Appellee.
No. 1D03-3277.
District Court of Appeal of Florida, First District.
July 25, 2005.
*1232 Charlie Crist, Attorney General, and Elizabeth F. Duffy, Assistant Attorney General, Tallahassee, for Appellant.
Barbara Hobbs of Cummings, Hobbs & Wallace, P.A., Tallahassee, for Appellee.
PER CURIAM.
The State of Florida appeals an order granting a post-verdict motion for judgment of acquittal (JOA). We agree the lower court erred in entering the JOA, and therefore reverse and remand with directions that the verdict be reinstated.
Upon arriving at the scene of a retail establishment, Ling Dynasty Apparel, in response to a reported burglary, investigating officers noticed a display case with CDs for sale that looked homemade, which is made illegal by section 540.11(3)(a)1, Florida Statutes (2002).[1] They also observed a laptop computer, a CD duplicating machine, a box of CD labels, CD Label Creator software, a scanner, and a printer. During the course of the investigation, the defendant, Bruce Ling, came to the store and, in response to the officers' questions, identified himself as the store owner. After the officers informed him they were seizing the computer and other related property as articles used in violation of the law, Ling replied, "I didn't know you couldn't copy disks and sell them." When Sheriff's Deputy Pat McLeod asked Ling what he meant, Ling did not reply. Ling abruptly left the premises during the course of the investigation and upon being called by McLeod to return and sign a property receipt, Ling declined. On cross-examination, McLeod said Ling never retracted that he was owner of the business, but admitted the officers did not investigate further whether he was in fact the actual owner.
Another investigating officer, Sheriff's Detective Brian Balser, testified that an employee at the scene was asked to summon the owner of the business, and shortly afterward the defendant arrived. Balser further testified that he saw hundreds of CDs that did not appear to be commercially licensed products, because they lacked the typical identifying stickers, the packaging was different, and the labels were of an inferior quality. Balser later obtained a search warrant, returned to the Ling Dynasty, and, upon asking to speak to the owner, he was told that Mr. Ling was not there. When asked during his examination whether he knew there were about five Mr. Lings in the family, Detective Balser said that he "may have misspoken" and that he had asked for Bruce Ling, and the employee told him Bruce Ling was the owner. When further asked whether he knew that Linda Ling was the owner, Detective Balser answered that he did not.
After seizing the property pursuant to a search warrant, the officers found hand-written instructions on how to copy CDs and how to advertise and sell CDs, as well as a program called Easy CD Creator on the hard drive. They were unable, however, to find identifiable fingerprints on the computer or CDs. The only specific evidence connecting Ling to the unauthorized articles was a receipt made out to Bruce *1233 Ling from Brown's Funeral Service uncovered among the impounded CD materials.
Several months following the officers' seizure of the articles, Ling contacted the sheriff's department and demanded the return of the computer equipment, and he was asked to come to the department. Upon his arrival, he was placed under arrest, waived his Miranda rights, and reported that the computer was used only for business purposes, although he did not identify the purpose. When asked about the CDs, Ling said he did not want to talk about that. When asked whether he was an owner of the store, Ling refused to give a yes or no answer, but said he was a representative of the business. Ling wrote the following statement, in part:
The equipment was used solely for business purposes. It was not used to duplicate CDs or anything in that nature to be sold at Ling Dynasty. I explained this to Brian Balser in the past, but he is determined to charge me  to charge someone in this case, so I guess he charged me because I continually asked what was the situation with the equipment. I am in no way tied to any of this, just a representative.
The case proceeded to trial, and appellant was found guilty as charged. Thereafter, in granting appellee's renewed, post-trial motion for JOA as to the first element of the offense  that the defendant had offered the confiscated items for sale  the court concluded that the proof, when viewed in the light most favorable to the state, failed to support appellee's guilt. In so ruling, the court considered the evidence against the defendant to be primarily circumstantial, and it focused on the lack of evidence showing Ling's ownership or control over the articles seized. Among other things, the court noted that although there was testimony that the defendant was the business owner, the state failed to present any evidence regarding the nature of the ownership; thus there was no evidence that Ling had exclusive possession or control over the store or the illegal merchandise; that he operated or directed the operation of the computer; that the computer was used to create the illegal merchandise; or that he personally directed the sale, resale, or advertising of the merchandise.
It further observed that, although two employees had told Detective Balser that Bruce Ling was the owner, there was also evidence the defendant's father was named Bruce Ling, and that the state's description of Bruce Ling as the owner, without any elaboration of what the term meant, was insufficient to support a finding of guilt. As to the receipt made out to Ling from a funeral home found among the illegal materials, such evidence was insufficient to infer that Ling had committed the crime charged because it did not aid in understanding what ownership role defendant had with the store.
Finally, although Ling called the sheriff's office asking for the return of the computer equipment, and said the computers were used for the business, there was no evidence linking Ling with use of the computer, or any evidence showing that Ling exercised control or direction over the computer for an illegal purpose. The court thereupon concluded that the circumstantial evidence failed to rebut the reasonable inference that Ling had no control over the computer disks in question.
We review an order granting a motion for JOA by the de novo standard. See Pagan v. State, 830 So.2d 792 (Fla.2002); State v. Fagan, 857 So.2d 320 (Fla. 2d DCA 2003). In a circumstantial-evidence case, a court should grant a motion for JOA if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt, viewing the evidence in the light *1234 most favorable to the state. State v. Law, 559 So.2d 187 (Fla.1989). In meeting its burden, the state is not required to "`rebut conclusively every possible variation'" of events which could be inferred from the evidence, but must introduce competent evidence which is inconsistent with the defendant's theory of events. Id. at 189 (citation omitted). Once the state has met its initial burden, it is the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. Orme v. State, 677 So.2d 258, 262 (Fla.1996). In considering a motion for JOA in a circumstantial-evidence case, the trial court's sole function is to decide whether there is a prima facie inconsistency between the evidence, when viewed in the light most favorable to the state, and the defense theory or theories. If there is an inconsistency, the issue is reserved for the trier of fact to resolve. Id. On appeal, the trial court's findings can be reversed only if they are unsupported by competent, substantial evidence. Id.
In applying the above principles to the lower court's JOA, we conclude that there is a lack of competent, substantial evidence in support thereof. Initially, it appears to us that the court erred in determining that the state's case as to the issue of whether the defendant was the owner of the business depended solely on circumstantial evidence. On the contrary, the state presented direct evidence that the defendant was the owner by reason of his admission to the officers. Obviously, this was sufficient evidence for a jury's consideration.
To the extent the court may have found the fact of ownership was not by itself sufficient evidence to rebut the defendant's reasonable hypothesis of innocence that he was not in control of the articles offered for sale because he did not have exclusive possession of them, the court apparently overlooked the significance of other evidence from which the jury could have concluded the contrary. Such evidence included a receipt made out to the defendant found among the instructions for copying CDs; the defendant's demand for the return of the articles seized; and the ineluctable fact that the CDs were on display in plain view, from which the jurors could reasonably infer that the defendant, as the owner of a retail establishment, was on notice that the materials offered for sale were not commercially licensed products, whether or not he actually knew this to be a violation of the law. This evidence, when juxtaposed with other evidence relating to appellant's own admissions as to the use of the materials, demonstrated, in our opinion, a prima facie inconsistency between the state's evidence, when viewed in the light most favorable to the state, and the defense's theory or theories.
REVERSED and REMANDED.
ERVIN, BARFIELD and VAN NORTWICK, JJ., concur.
NOTES
[1] The provision makes it unlawful to sell any article with knowledge, or with reasonable ground to know, that the sounds thereon were transferred without the consent of the owner. In order to sustain a conviction for a violation of the statute, the state must prove (1) that the defendant offered for sale or resale any article, (2) that the defendant had knowledge or had reasonable grounds to know that the sounds thereon had been transferred without the consent of the owner, and (3) that the unauthorized articles number more than 100.