948 So.2d 681 (2006)
Jesus DELGADO, Appellant,
v.
STATE of Florida, Appellee.
No. SC04-2274.
Supreme Court of Florida.
November 16, 2006.
*682 Roy D. Wasson of Wasson and Associates, Chartered, Miami, FL, for Appellant.
Charles J. Christ, Jr., Attorney General, Tallahassee, FL, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee.
*683 PER CURIAM.
In 2004, Jesus Delgado was retried for the 1990 murders of Tomas and Violetta Rodriguez pursuant to this Court's decision in Delgado v. State, 776 So.2d 233, 242 (Fla.2000) (hereinafter Delgado I). Delgado now appeals his convictions and death sentences from his 2004 retrial. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm Delgado's convictions and death sentences.

FACTUAL AND PROCEDURAL BACKGROUND
The record of Delgado's 2004 retrial establishes the following facts. In the early evening hours of August 30, 1990, Marlene McField saw her neighbors, Tomas and Violetta Rodriguez, arrive home. Later that night, around 10 p.m., Ms. McField heard dogs in the house directly behind the Rodriguezes' home, wailing and crying in an unusual fashion. The following morning, Ms. McField went to the Rodriguezes' home and noticed that the gate leading to the front porch was ajar and that the key was still in the lock on the inside portion of the gate. She removed the key from the gate, entered the front porch area, and rang the doorbell. No one answered. Knowing that the Rodriguezes were extremely security-conscious, Ms. McField became suspicious and called the police.
When the police arrived, they discovered that the front door was unlocked. The first officer on the scene did not notice any sign of forced entry or any sign of struggle in the living room and bedrooms. However, as the police moved toward the kitchen area, they discovered a bloodstained knife and a pistol lying on the floor. The police noticed signs of struggle in the kitchen, the garage, and the utility room connecting the kitchen to the garage. The wooden door leading from the utility room into the garage was cracked in the center and its hinges were broken. Mr. Rodriguez's body was found lying next to this door, just inside the garage, with multiple bullet and stab wounds. Mrs. Rodriguez's body was also discovered in the garage, wedged between the Rodriguezes' car and the garage wall. Her body exhibited signs of blunt force trauma, multiple stab wounds, and lacerations on her hands that the medical examiner later classified as defensive wounds. A single set of bloody shoeprint impressions led from the garage into the kitchen and up to two open kitchen drawers. In these drawers, the police found a knife similar to the one they had discovered earlier on the floor. Mr. Rodriguez was found without shoes and the soles of Mrs. Rodriguez's slippers did not match the bloody shoeprints.
The pistol found earlier was a .22 caliber Ruger semiautomatic that had been equipped with a homemade silencer, and its serial number had been removed. Six .22 caliber shell casings were recovered from the house and later determined to have been fired from the Ruger. No other .22 caliber ammunition was found in the home. Police discovered a .38 caliber revolver, which belonged to Mr. Rodriguez, in a zippered pouch inside a closed cabinet in the master bedroom, but testing on this revolver revealed that it had not been fired and tests performed on the victims' hands indicated that neither had triggered a firearm.
Several drops of blood matching Delgado's blood type, which is found only in one percent of the population, were found in the garage. A mixture of Delgado's blood type and the victims' blood types was found in the garage, on the handgun, at the base of the kitchen phone that hung from a wall, and on the kitchen phone itself. Delgado's palm print and fingerprint *684 were discovered on the kitchen phone in a mixture of Delgado's and the victims' blood types. The police later determined that the last call on the kitchen phone was made to the home of Delgado's girlfriend, Barbara Lamellas, with whom Delgado was residing at the time.
In addition to the physical evidence gathered from the crime scene, police learned that Delgado knew the Rodriguezes. In June 1990, the Rodriguezes sold their dry cleaning business to Horatio Lamellas, the father of Delgado's girlfriend, Barbara Lamellas. Barbara and Delgado ran the business. An employee at the dry cleaning business under both the Rodriguezes and Delgado, Maria Hernandez, testified that after the sale, Delgado complained that the machines were not working properly and that the customers were dissatisfied. She also heard Delgado state that the Rodriguezes had tricked him with regard to the machines and the business. Ms. Hernandez stated that when the Rodriguezes owned the dry cleaning business, business was steady and the machines worked well.
On December 23, 1992, nearly two years after the murders of Tomas and Violetta Rodriguez, police apprehended Delgado. On July 27, 1993, he was indicted by a grand jury on one count of first-degree murder for the killing of Tomas Rodriguez, one count of first-degree murder for the killing of Violetta Rodriguez, one count of armed burglary, and one count of possession of a firearm by a convicted felon. In addition, for the two counts of first-degree murder, Delgado was indicted on alternative theories, that the murders were either premeditated or committed during the commission of a felony. His first trial was conducted in 1994, and the jury found Delgado guilty on all counts. Delgado I, 776 So.2d at 235. After the penalty phase, the same jury recommended that Delgado be sentenced to death for the murder of Mr. Rodriguez by a vote of seven to five and that Delgado be sentenced to death for the murder of Mrs. Rodriguez by a unanimous vote of twelve to zero. Id. The trial court agreed and sentenced Delgado to death for each murder[1] and to life for armed burglary. Id.
On direct appeal, this Court granted Delgado a new trial. We held that the State's theory of burglary, which formed the basis of a conviction on felony murder, was legally inadequate because the State had not shown that Delgado remained in the Rodriguezes' dwelling surreptitiously. Id. at 242, superseded by § 810.015, Fla. Stat. (2001).[2] At Delgado's new trial, the State tried him on two counts of first-degree murder based exclusively on the theory that the murders were premeditated.[3] Delgado maintained a theory of innocence *685 and presented no evidence or testimony.
On May 26, 2004, Delgado was convicted of two counts of first-degree premeditated murder for the deaths of Tomas and Violetta Rodriguez. The penalty phase was conducted on July 8, 2004. Delgado sought to waive his right to present mitigation evidence. After a colloquy to determine if Delgado's waiver was knowing and voluntary, the trial court accepted the waiver. The jury recommended death for the first-degree murder of Tomas Rodriguez by a vote of nine to three and death for the first-degree murder of Violetta Rodriguez by a vote of nine to three. On September 30, 2004, a Spencer[4] hearing was held in which Delgado again was advised of his right to present mitigation evidence, but he declined to do so. Finally, at the sentencing hearing on October 18, 2004, the trial court again gave Delgado one last opportunity to put on mitigating evidence. Again, Delgado declined.
In its sentencing order, the trial court gave the jury recommendation moderate weight.[5] The trial court found three aggravating circumstances in each murder to which it assigned great weight. For both murders, the trial court found the heinous, atrocious, or cruel (HAC) and cold, calculated, and premeditated (CCP) aggravators. In addition, for Tomas Rodriguez, the trial court found the prior violent felony aggravator based on Delgado's prior conviction for aggravated assault; and, for Violetta Rodriguez, the trial court found the prior violent felony aggravator based on Delgado's contemporaneous conviction for the death of Tomas Rodriguez. No statutory mitigators were established.[6] However, the trial court did find the following nonstatutory mitigators based primarily on the mitigating evidence established at Delgado's first trial: (1) Delgado never used drugs or alcoholassigned moderate weight; (2) he had a difficult childhood and suffered physical and emotional abuse at the hands of his mother, father, stepfather, the Cuban government, and neighborsassigned moderate weight; (3) he loves his familyassigned minimal weight; and (4) his behavior throughout trial was appropriatemoderate weight. The trial court also considered Delgado's presentence investigation report.
The trial court found that the three weighty aggravators were more than sufficient to impose the death penalty and substantially outweighed the totality of the mitigating circumstances. Therefore, the trial court sentenced Delgado to death for each count of first-degree murder. Delgado filed this appeal.

ISSUES ON APPEAL
Delgado raises eight issues in this appeal: (1) whether retrying him for first-degree premeditated murder violated his right to be free from double jeopardy based on this Court's holding in Delgado I; (2) whether the trial court erred in denying *686 a mistrial based on the prosecutor's comments to the jury and at sidebar during closing argument; (3) whether the trial court abused its discretion in allowing the pen register tape to be admitted into evidence without a foundation laid by a technical expert and the officer who employed the pen register device; (4) whether the trial court committed reversible error when it repeated the jury instructions concerning the definition and elements of first-degree murder; (5) whether the trial court committed reversible error by instructing the jury panels during voir dire that they "will" rather than "may" hear mitigation evidence if they returned a guilty verdict even though there was no contemporaneous objection; (6) whether Florida's capital sentencing scheme violates Delgado's Sixth Amendment right under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), by authorizing imposition of the death sentence without a unanimous jury verdict; (7) whether the trial court committed reversible error when it sustained the State's objection to defense counsel's comments during closing argument regarding the State's failure to present DNA evidence; and (8) whether there is a reasonable probability that the cumulative errors at trial contributed to the jury's verdict regardless of whether evidence of guilt was otherwise substantial. In addition, we also consider whether the evidence was sufficient to sustain Delgado's convictions and whether his sentences are proportionate.
After fully examining this record, we find that claims (4), (5), (7), and (8) are without merit and require no further discussion. In addition, we have repeatedly rejected Ring claims similar to Delgado's and deny claim (6) without further discussion. In the analysis that follows, we analyze Delgado's first three claims and ultimately affirm Delgado's convictions and death sentences.

I. Double Jeopardy
Delgado claims that his retrial on two counts of first-degree premeditated murder was barred by double jeopardy because he was, in effect, judicially acquitted of first-degree murder by this Court in Delgado I. Delgado reasons that because this Court held that the State's theory of burglary was both factually and legally insufficient, likewise the State's theory of first-degree felony murder was both factually and legally insufficient. He further reasons that he has effectually been acquitted of first-degree murder in its entirety due to the factual insufficiency of the underlying theory of felony murder and, therefore, cannot be retried on the theory of premeditated murder.
Delgado's claim is without merit. While we recognize that an acquittal is required when a conviction is not supported by factually sufficient evidence, see, e.g., Ballard v. State, 923 So.2d 475, 486 (Fla.2006) (reversing convictions, vacating sentences, and remanding with directions to enter a judgment of acquittal where evidence was insufficient to support convictions), and that such an acquittal gives rise to double jeopardy protections, Sattazahn v. Pennsylvania, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), this Court did not effectually acquit Delgado of first-degree murder in Delgado I. In Delgado I, we discussed at length the distinction between legal and factual insufficiency and expressly stated that "[t]his is not a case where there was merely insufficient evidence to support the burglary charge." Id. at 242 (emphasis added). Rather, we stated that "[p]ursuant to our analysis in today's opinion, [the State's] theory of burglary (and felony murder) is legally inadequate." Id. (emphasis added). We did not *687 find that either of the State's theories of first-degree murder was factually insufficient and expressly stated that "[o]ur decision in no way prevents the State from prosecuting appellant for whatever crimes he may have committed once inside the victim's home." Id. at 241. In fact, the only factual insufficiency we recognized was consequent to our holding that the State was required to show that Delgado remained in the Rodriguezes' dwelling surreptitiously in order to prove Delgado committed burglary. Id. at 242.
Moreover, even if the State's theory of felony murder was rendered factually insufficient by our holding in Delgado I, we expressly recognized that a defendant may be retried on the same count where one of two alternative theories is factually insufficient but the other is not. Id. (citing Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); San Martin v. State, 717 So.2d 462, 470 (Fla. 1998)). Thus, because the State's alternative theory of first-degree murder based on premeditation was not held to be factually insufficient in Delgado I, Delgado was not effectually acquitted of first-degree murder.
In the alternative, Delgado asserts that he was acquitted of premeditated murder under Delgado I because the State's theory of burglary at his first trial included all the elements of premeditated murder; and, therefore, his acquittal on the burglary count amounts to an acquittal on the premeditated murder count under the "same elements" test of Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[7] However, burglary and first-degree premeditated murder do not share all of the same statutory elements; in particular, they do not share the same element of intent.[8] Conceding this fact, Delgado invites us to expand the "same elements" test beyond a comparison of the statutory elements to consider the record and the State's actual theory. Gaber v. State, 684 So.2d 189, 190 (Fla.1996) (stating that in our double jeopardy analysis, "we cannot examine facts from the record" but "must look only to the statutory elements"). We decline the invitation. We find no compelling reason to depart from established precedent and expand the "same elements" test in Florida.
Our holding in Delgado I did not bar the State from retrying Delgado for first-degree murder under the theory that it was premeditated. Therefore, we deny this claim for relief.

II. Prosecutorial Comments
Delgado next claims that the trial court erred in denying his motion for mistrial based on the prosecutor's comments during closing argument, both to the jury and at sidebar. Delgado argues that these comments were so prejudicial that, at the very least, their cumulative effect warrants reversal. After thoroughly examining the prosecutor's comments during closing argument, we find that none of these comments, either individually or taken together, necessitated that the trial court declare a mistrial. Ferguson v. State, 417 So.2d 639, 641 (Fla.1982) ("A motion for mistrial is addressed to the sound discretion of the *688 trial judge and . . . `should be done only in cases of absolute necessity'") (quoting Salvatore v. State, 366 So.2d 745, 750 (Fla. 1978)).
While we deny Deglado's request for relief on this claim, the prosecutor's comment concerning the defense's "concession" warrants further discussion. During closing argument, Delgado argued that the murders were clearly premeditated and that the State had shown the jury multiple pictures of the crime scene and the victims' bodies only to evoke an emotional response. In response, the prosecutor explained that it showed the jury these pictures in order to prove premeditation. In this context, the prosecutor made the following statement:
It is all well and good for him to stand up now after we have been in trial for two and a half weeks and tell you that, yeah, these are horrible, premeditated murders, but the problem is that two and a half weeks ago, I didn't hear that concession.
Delgado objected to the State's characterization of his closing argument as a "concession" that the murders were premeditated and simultaneously moved for a mistrial on three grounds, including that the comment shifted the burden to the defense.[9] The trial court denied Delgado's motion and stated that the objection was not sustained "except to the extent that I don't want you to pursue anything that would suggest a burden on anybody but the State." The prosecutor responded by reminding the jury that the State alone carries the only burden of proof. She said:
What is the name of the charges in this case? First Degree Premeditated Murder. Who has the burden of proving the charges in this case? Right here on the State. Right here. The only burden in this case, in any criminal case falls to the State.
In this context, even if the comment was improper it was certainly not "so prejudicial as to vitiate the entire trial." Duest v. State, 462 So.2d 446, 448 (Fla.1985) (citing Cobb v. State, 376 So.2d 230 (Fla.1979)); accord Ibar v. State, 938 So.2d 451, 31 Fla. L. Weekly S149, S155 (Fla. Mar. 9, 2006) (quoting Duest, 462 So.2d at 448). Therefore, Delgado has not demonstrated that a mistrial was an absolute necessity. Duest, 462 So.2d at 448; Ferguson, 417 So.2d at 641. Therefore, we deny relief.

III. Admission of Pen Register Tape
Delgado claims that the trial court erred by admitting the pen register tape into evidence without laying a proper foundation. The pen register tape shows that the last telephone number dialed from the Rodriguezes' kitchen phone was to the home of Delgado's girlfriend, Barbara Lamellas. The State laid the foundation for admission of the pen register tape through Detective Israel Reyes. Detective Reyes testified that he was a college and law school graduate who had training and experience utilizing electronic surveillance techniques, including the utilization of pen registers, which he observed in more than a dozen cases and personally utilized in two prior cases. He was in the room when the pen register was operated and he saw and heard what normally occurs when a pen register is used. Further, he identified the pen register tape as the tape produced by the pen register utilized during the investigation in this case. However, Detective Reyes was neither a technical expert nor the officer who operated the pen register.
*689 Defense counsel objected to the admission of the pen register tape through Detective Reyes, arguing that the evidentiary foundation needed to admit a pen register tape is comparable to that required to admit the results of a breathalyzer test. Specifically, defense counsel argued that "[t]he content of the pen register tape requires authentication by a person who did the work [and] could testify as to the accuracy." Further, defense counsel argued that the State must establish the expertise of the person who did the work, and that this person must testify as to "the procedure employed . . . [and] the validity of the results . . . [of the] machinery or whatever device was used. . . ." The trial court overruled defense counsel's objection and allowed the State to lay the foundation for the admission of the pen register tape through Detective Reyes.
Delgado's claim is without merit. He has not demonstrated that the foundation laid at trial was insufficient to admit the pen register tape into evidence. While he argues that the State was required to lay the same heightened foundation as that required by statute to admit breathalyzer test results,[10] he has failed to cite any authority that actually supports his argument, and he offers no compelling reason why pen register tapes require the same heightened foundation as breathalyzer test results.[11] Accordingly, he has not demonstrated that the trial court abused its discretion in admitting the pen register tape through the testimony of Detective Reyes. Dessaure v. State, 891 So.2d 455, 466 (Fla. 2004) ("A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion.") (citing Blanco v. State, 452 So.2d 520 (Fla.1984)). Therefore, we deny relief on this claim.

IV. Sufficiency of the Evidence
Although Delgado did not challenge the sufficiency of the evidence on appeal, this Court will "independently review the evidence to determine whether sufficient evidence exists to support a first-degree murder conviction." Snelgrove v. State, 921 So.2d 560, 570 (Fla.2005) (citing Mansfield v. State, 758 So.2d 636, 649 (Fla.2000)). We have recognized that "circumstantial evidence can be sufficient to sustain a conviction" provided that the evidence *690 is (1) "consistent with the defendant's guilt" and (2) "inconsistent with any reasonable hypothesis of innocence." Orme v. State, 677 So.2d 258, 261 & n. 1 (Fla.1996) (quoting Davis v. State, 90 So.2d 629, 631 (Fla.1956)). On the other hand,
Evidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, . . . is not sufficient to sustain conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict.
Orme, 677 So.2d at 261 n. 1 (quoting Davis v. State, 90 So.2d 629, 631-32 (Fla.1956)). "The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict," reversal is not required. Darling v. State, 808 So.2d 145, 155 (Fla.2002) (quoting State v. Law, 559 So.2d 187, 188 (Fla. 1989)). In addition, the State is not required to "rebut conclusively, every possible variation of events," but only to present evidence that is inconsistent with the defendant's reasonable hypothesis. Id. at 156 (quoting Law, 559 So.2d at 188-89).
Although the evidence is circumstantial, the State has presented competent, substantial evidence which is consistent with Delgado's guilt and inconsistent with Delgado's reasonable hypothesis of innocence. First, as for the evidence consistent with Delgado's guilt, the record shows that Delgado's blood type, matching only one percent of the population, was found at the crime scene and on one of the murder weapons, the pistol, in a mixture of the victims' blood types; his palm and fingerprints were found on the kitchen phone in a mixture of his blood type and the victims' blood types; and the last call made from the kitchen phone was to his girlfriend's home. In addition, the record shows that more than sufficient evidence of premeditation was presented. The record also shows that Delgado had a motive based on his relationship with the victimshe was unhappy with them over the dry cleaning business.
Second, the State also presented substantial, competent evidence that is inconsistent with Delgado's alternative theories of innocence. The first defense theory was that Delgado was innocent because he had no relationship with the victims and, therefore, no motive. The State not only presented evidence that was inconsistent with this theory, but this theory itself is inconsistent with Delgado's alternative theory, that he was in their home but he did not commit the act and that someone else committed the murder after he left. The physical evidence at the crime scene is inconsistent with Delgado's alternative theory that he did not commit the act. Furthermore, there is no evidence in the record that another person had been in the victims' home.[12]Cf. Orme, 677 So.2d at 261-62 (holding State's theory was more plausible than defendant's theory that someone else committed the murder after defendant left the motel room where nothing in record suggested that another person was present). Thus, we conclude that "competent substantial evidence supports the conclusion that the State had presented adequate evidence refuting [the defendant's] theory, creating inconsistency between *691 the State and defense theories." Id. at 262. Therefore, we affirm Delgado's convictions for first-degree murder.

V. Proportionality
Finally, although Delgado did not raise this issue on appeal, this Court reviews each death sentence for proportionality. See, e.g., Porter v. State, 564 So.2d 1060, 1064 (Fla.1990). "[T]o ensure uniformity in death penalty proceedings, `we make a comprehensive analysis in order to determine whether the crime falls within the category of both the most aggravated and the least mitigated of murders, thereby assuring uniformity in the application of the sentence.'" Floyd v. State, 913 So.2d 564, 578 (Fla.2005) (quoting Anderson v. State, 841 So.2d 390, 407-08 (Fla.2003)). Where a defendant has waived the presentation of mitigation evidence, the trial court is required to consider all mitigation contained in the record and in the presentence investigation report. Muhammad v. State, 782 So.2d 343, 363-64 (Fla.2001).
The trial court sentenced Delgado to death based on the following facts. The jury recommended death by a vote of nine to three on each count of first-degree murder, to which the judge assigned moderate weight because Delgado waived the presentation of mitigation. The trial court found the existence of three weighty aggravating factors beyond a reasonable doubt for each victim. For Tomas, the trial court found: (1) prior violent felony conviction based on a prior aggravated assault; (2) CCP; and (3) HAC. For Violetta, the trial court found the same three aggravating factors with the exception that the prior violent felony aggravator is based on Delgado's contemporaneous conviction for Tomas's murder. The trial court considered whether any mitigating factors applied based on mitigation evidence introduced during the penalty phase at Delgado's first trial and based on the presentence investigation report. The trial court found that none of the statutory mitigators applied but found that four nonstatutory mitigators applied, each of which was afforded moderate weight. Given this analysis, the trial court determined that death was appropriate and sentenced Delgado to death.
We find that Delgado's sentences are proportional in relation to other death sentences that this Court has upheld. See, e.g., Lynch v. State, 841 So.2d 362, 377 (Fla.2003) (finding death sentence proportional in double murder case where the trial court found the HAC, CCP, and prior violent felony (contemporaneous murder) aggravators outweighed one statutory mitigator, i.e., no significant criminal history, and eight nonstatutory mitigators); Dennis v. State, 817 So.2d 741, 750, 766 (Fla. 2002) (finding death sentence proportional in double murder case where four weighty aggravating factors, HAC, CCP, prior violent felony (contemporaneous murder), and murder committed in course of felony (burglary), outweighed three statutory and five nonstatutory mitigators assigned little or no weight). Therefore, we affirm Delgado's sentences.

CONCLUSION
For the reasons expressed above, we affirm Delgado's convictions and sentences of death.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] At Delgado's first trial, the trial court found two aggravating circumstances in the death of Tomas Rodriguez: (1) prior violent felony and (2) murder committed during an enumerated felony (armed burglary). The trial court found three aggravating circumstances in the death of Violetta Rodriguez: (1) prior violent felony, (2) murder committed during an enumerated felony (armed burglary), and (3) heinous, atrocious, or cruel (HAC). The trial court found no statutory mitigation, and some nonstatutory mitigation. See infra, note 7.
[2] Section 810.015(1), Florida Statutes, states as follows:

The Legislature finds that the case of Delgado v. State, [776 So.2d] 233 (Fla.2000), was decided contrary to legislative intent and the case law of this state relating to burglary prior to Delgado v. State. The Legislature finds that in order for a burglary to occur, it is not necessary for the licensed or invited person to remain in the dwelling, structure, or conveyance surreptitiously.
[3] The trial court granted Delgado's uncontested pretrial motion to bar retrial on burglary and felony murder based on Delgado I. The State also nolle prosequied the count of possession of a firearm.
[4] Spencer v. State, 615 So.2d 688 (Fla.1993).
[5] The sentencing order cites to Muhammad v. State, 782 So.2d 343, 363 (Fla.2001) (finding that jury's recommendation cannot be afforded great weight when mitigation evidence is not presented).
[6] The trial court reviewed documents from Delgado's first trial to determine whether Delgado's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. The trial court found that (a) Delgado's neurological examination that occurred between the guilt and penalty phases of the first trial did not reveal evidence of any neurological complications; and (b) three previously rendered psychology reports and his presentence investigation revealed no credible evidence to suggest that Delgado's capacity was diminished.
[7] "This test inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars subsequent punishment or prosecution." Boler v. State, 678 So.2d 319, 321 (Fla.1996) (citing Blockburger, 284 U.S. at 304, 52 S.Ct. 180).
[8] The intent required for burglary is that the accused intended to commit an offense. § 810.02(1)(a), Fla. Stat. (2006). The intent required for premeditated murder is that the accused formed the specific intent to kill a human being. § 782.04(1)(a)(1), Fla. Stat. (2006).
[9] The other two grounds for Delgado's objection were that (1) the comment was improper closing argument and (2) the comment went to Delgado's right to remain silent.
[10] See State v. Donaldson, 579 So.2d 728, 729 (Fla.1991) (stating that "there must be probative evidence (1) that a breathalyzer test was performed substantially in accordance with methods approved by the [Department of Health and Rehabilitative Services (HRS)], and with a type of machine approved by HRS, by a person trained and qualified to conduct it and (2) that the machine itself has been calibrated, tested, and inspected in accordance with HRS regulations to assure its accuracy before the results of a breathalyzer test may be introduced. Evidence of the reliability of the machine can be presented by the person conducting its testing and inspection or, if records of use and periodic testing are kept in the regular course of business, by production of such records.") (citing State v. Bender, 382 So.2d 697 (Fla.1980)). See § 316.1932, Fla. Stat. (2006) (providing testing methods for alcohol blood level, including breathalyzers, and implied consent rule); § 316.1934(3), Fla. Stat. (2006) (providing that officer's affidavit attesting to specific information regarding defendant's breathalyzer test results, including the date the breathalyzer was last inspected, is admissible as exception to hearsay rule).
[11] We note that Florida law does regulate the use of pen registers. See § 934.01, Fla. Stat. (2002) (making legislative findings); § 934.02(20), Fla. Stat. (2002) (defining pen register); §§ 934.03-.09, Fla. Stat. (2002) (regulations applying to electronic wire communications to protect privacy of Floridians); §§ 934.31-.34 (2002) (regulations applying specifically to pen registers). However, unlike the admissibility requirements for breathalyzer tests, Florida's statutory law does not impose heightened requirements for the admissibility of information lawfully obtained through the use of a pen register.
[12] Although Delgado argued that there was a palm print on the Rodriguezes' vehicle in the garage which did not belong to him, the police were not able to test whether the palm print belonged to one of the victims. Because the evidence suggests that Mrs. Rodriguez was chased around the vehicle by her murderer, it would have been reasonable for the jury to infer that this palm print belonged to her.