SAWAYA, J.
 

 Justin Barber was convicted of first-degree murder with a firearm for the killing of his wife and sentenced to life in prison. He appeals the judgment and sentence, claiming that the trial court erred in denying his motion for judgment of acquittal because the evidence at trial, which was wholly circumstantial, did not exclude every reasonable hypothesis of innocence.
 

 Late in the evening of April 17, 2002, Barber and his wife were celebrating a belated third wedding anniversary on a desolate strip of beach located between Ponte Vedra and St. Augustine. According to Barber’s version of events, he and his wife were accosted by an unknown assailant as they walked along the ocean, the assailant shot and killed his wife at the surfs edge, and Barber dragged her body to the dune walkover before going for help. According to the State, Barber half-drowned his wife in the ocean, then dragged her to the end of the dune walkover, where he shot and killed her.
 

 Barber was arrested and charged with first-degree murder. During the course of the investigation, the police discovered that a $2 million life insurance policy covering the lives of both Barber and his wife had been obtained the year before. A search of Barber’s computer revealed that in the months prior to the murder Barber had conducted a Google search of terms such as “trauma, cases, gunshot, right chest” and “Florida & divorce.” The police also discovered that Barber had several affairs during his marriage, and they located a witness who testified that she had an affair with Barber a few months prior to the murder. The investigation further revealed that although Barber had downloaded a large number of songs on his
 
 *11
 
 computer, sixteen were downloaded on the date of the murder. In particular, a song by Guns N’ Roses entitled “Used to Love Her (But I Had To Kill Her)” was downloaded that date, but deleted two weeks later.
 
 [1]
 

 The trial commenced with Barber on notice that the State was seeking the death penalty. Much of the guilt phase of the trial consisted of forensic and medical evidence regarding blood and fluid discharge from the victim and other forensic evidence that we need not discuss in detail. At the conclusion of the State’s case, Barber moved for a judgment of acquittal, and he renewed that motion at the close of the evidentiary portion of the trial. That motion was denied, and the jury subsequently found Barber guilty of first-degree murder with a firearm.
 

 In the penalty phase of the trial (the
 
 Spencer
 

 [2]
 

 hearing), the State presented argument in support of the three statutory aggravators; Barber refused to offer mitigating evidence or submit argument. The jury, by a vote of eight to four, recommended that the death penalty be imposed. The trial court considered the evidence and the State’s arguments and found: (1) the murder was at least partially motivated by pecuniary gain (medium weight); and (2) the murder was committed in a cold, calculated, and premeditated manner (great weight). However, as to whether the crime was heinous, atrocious, and cruel (H.A.C.), the court found that the State did not prove this aggravator beyond a reasonable doubt because the State did not sufficiently prove that Barber attempted to drown his wife before he shot her. Specifically, the trial court found that Barber may have shot her at the water’s edge, causing her to fall into the water, and then dragged her to where her body was found by the police. Despite the jury’s recommendation, the trial court imposed a life sentence. Barber appeals, claiming that the trial court erred in denying his motion for judgment of acquittal.
 

 Because this is a purely circumstantial evidence case, a special standard of review applies to our analysis. The Florida Supreme Court has consistently explained that special standard a number of times. In
 
 Troy v. State,
 
 948 So.2d 685 (Fla.2006),
 
 cert. denied,
 
 — U.S.-, 127 S.Ct. 2981, 168 L.Ed.2d 711 (2007), the court reiterated:
 

 In reviewing a motion for judgment of acquittal, a de novo standard of review applies.
 
 See Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002),
 
 cert. denied,
 
 539 U.S. 919 [123 S.Ct. 2278, 156 L.Ed.2d 137] (2003). Generally, an appellate court will not reverse a conviction that is supported by competent, substantial evidence.
 
 See Pagan,
 
 830 So.2d at 803 (citing
 
 Donaldson v. State,
 
 722 So.2d 177 (Fla.1998);
 
 Terry v. State,
 
 668 So.2d 954, 964 (Fla.1996)). There is sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt.
 
 See Banks v. State,
 
 732 So.2d 1065 (Fla.1999). “A motion for judg
 
 *12
 
 ment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt.”
 
 Orme v. State,
 
 677 So.2d 258, 262 (Fla.1996).
 

 “The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.”
 
 Darling v. State,
 
 808 So.2d 145, 155 (Fla.) (quoting
 
 State v. Law,
 
 559 So.2d 187, 188 (Fla. 1989)),
 
 cert. denied,
 
 537 U.S. 848 [123 S.Ct. 190, 154 L.Ed.2d 78] (2002). In meeting its burden, the State is not required to “rebut conclusively, every possible variation of events” which could be inferred from the evidence, but must introduce competent evidence which is inconsistent with the defendant’s theory of events.
 
 Darling,
 
 808 So.2d at 156 (quoting
 
 Law,
 
 559 So.2d at 189). Once the State meets this threshold burden, it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
 
 Id.
 

 [[Image here]]
 

 This Court does not have to determine that every reasonable hypothesis of innocence was excluded in this case. The sole determination we must make is whether there was competent, substantial evidence for the jury to make such a determination.
 
 See Darling,
 
 808 So.2d at 156 (citing
 
 Law,
 
 559 So.2d at 188-89).
 

 Id.
 
 at 645-46 (quoting
 
 Johnston v. State,
 
 863 So.2d 271, 283-84 (Fla.2003)),
 
 cert. denied,
 
 541 U.S. 946, 124 S.Ct. 1676, 158 L.Ed.2d 372 (2004);
 
 see also Huggins v. State,
 
 889 So.2d 743 (Fla.2004),
 
 cert. denied,
 
 545 U.S. 1107, 125 S.Ct. 2546, 162 L.Ed.2d 280 (2005). In
 
 Orme v. State,
 
 677 So.2d 258, 262 (Fla.1996),
 
 cert. denied,
 
 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997), the court further explained that
 

 the sole function of the trial court on motion for directed verdict in a circumstantial-evidence case is to determine whether there is prima facie inconsistency between (a) the evidence, viewed in the light most favorable to the State and (b) the defense theory or theories. If there is such inconsistency, then the question is for the finder of fact to resolve. The trial court’s finding in this regard will be reversed on appeal only where unsupported by competent substantial evidence.
 

 Barber strenuously argues that his claim of error based on the trial court’s failure to grant the motion for judgment of acquittal is “sealed” by the court’s finding regarding the State’s failure to prove the H.A.C. aggravator. Specifically, Barber contends that the trial court’s finding established his theory of defense, which was that his wife was shot at the water’s edge by an unknown assailant and her body dragged to the spot where the police found it. We disagree.
 

 The penalty phase proceedings are distinct from the guilt phase of a murder trial, and this distinction is clearly expressed in section 921.141(1), Florida Statutes (2002), which provides in pertinent part:
 

 SEPARATE PROCEEDINGS ON ISSUE OF PENALTY. — Upon conviction or adjudication of guilt of a defendant of a capital felony, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment as authorized by s. 775.082_In the proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters re
 
 *13
 
 lating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the Constitution of the State of Florida. The state and the defendant or the defendant’s counsel shall be permitted to present argument for or against sentence of death.
 

 The penalty phase is intended to determine the sentence to be imposed in a capital case after a verdict of guilt has been rendered; it is not intended to determine the guilt of the defendant. Unlike the guilt phase of a capital trial, the rules of evidence are relaxed in the penalty phase of the proceedings. The trial court’s finding as to one or more aggravators in the penalty phase is not intended to override the jury’s verdict in the guilt phase of the proceedings, and there is nothing to suggest that is what the trial court intended to do in the instant case.
 

 We also note that the finding made by the trial court in support of its refusal to apply the H.A.C. aggravator has no relevance to the issue of the murderer’s identity, contrary to Barber’s argument. The trial court’s finding, that there was insufficient evidence to prove beyond a reasonable doubt that Barber attempted to drown his wife before he shot her, relates only to the manner of the killing. The manner in which the murder was accomplished is a critical consideration when determining the applicability of the H.A.C. aggravator, which applies where the victim was mentally or physically tortured by the murderer in an attempt to inflict a high degree of pain and suffering before the victim’s life is taken.
 
 Offord v. State,
 
 959 So.2d 187 (Fla.2007);
 
 Hardwick v. State,
 
 521 So.2d 1071, 1077 (Fla.),
 
 cert. denied,
 
 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988) (“The factor of heinous, atrocious and cruel arises from the means actually employed in the killing ....”);
 
 see also Belcher v. State,
 
 851 So.2d 678, 683 (Fla.) (holding that the H.A.C. aggravator may be established where a victim is conscious for between 30 seconds and a minute before drowning and there is evidence of a struggle such as evinces an awareness of impending death),
 
 cert. denied,
 
 540 U.S. 1054, 124 S.Ct. 816, 157 L.Ed.2d 706 (2003);
 
 Walker v. State,
 
 707 So.2d 300, 315 (Fla.1997) (holding that H.A.C. aggravator was appropriately found in drowning death, regardless of whether the victim was conscious when she was thrown into canal, because there was other evidence of a struggle). We therefore reject Barber’s argument that the finding regarding this aggravator applied to the issue whether the evidence was sufficient to rebut Barber’s hypothesis of innocence that someone else killed his wife.
 

 As to our de novo review of the record before us, we conclude that when viewed in the light most favorable to the State, the evidence the State introduced at trial is inconsistent with Barber’s theory of events. Because such an inconsistency was established, the trial court correctly let the jury decide whether the evidence excluded all reasonable hypotheses of innocence. The jury heard all of the testimony and considered all of the evidence presented in the guilt phase of the trial and determined that all reasonable hypotheses of innocence were excluded. Concluding that substantial, competent evidence exists in the record to support the jury’s verdict,
 
 *14
 
 we affirm Barber’s conviction and his sentence.
 

 AFFIRMED.
 

 PALMER, C.J., and GRIFFIN, J., concur.
 

 [1]
 

 . We note these facts because Barber also raises the issue that the trial court erred in denying his motions in limine directed at precluding the State from introducing evidence of (a) his extramarital affairs; (b) his computer search of the terms mentioned; and (c) the $2 million life insurance policy insuring the lives of Barber and his wife. Barber further claims that the trial court erred in denying his request to interview the jurors to determine whether they had been tainted by exposure to extensive media coverage and Court TV commentary about the case. As to these issues, we affirm without further discussion.
 

 [2]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla.1993).